No. 96-539

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

IN THE MATTER OF LITIGATION RELATING TO THE
RIOT OF SEPTEMBER 22, 1991, AT THE MAXIMUM
SECURITY UNIT OF THE MONTANA STATE PRISON.

APPEAL FROM:   District Court of the Third Judicial District,
In and for the County of Powell,
The Honorable Ted Mizner, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

John H. Maynard, Marcia Davenport; Browning, Kaleczyc, Berry &
Hoven, Helena, Montana

Norman C. Peterson, Assistant Attorney General, Agency Legal Services
Bureau, Helena, Montana

For Respondents:

William Boggs, Attorney at Law, Missoula, Montana

Michael D. Cok, Attorney at Law, Bozeman, Montana

Wendy Holton, Attorney at Law, Helena, Montana

Kerry N. Newcomer; Geiszler & Newcomer, Missoula, Montana

Scott C. Wurster; Attorney at Law, Kalispell, Montana

Submitted on Briefs: May 15, 1997

Decided: June 24, 1997

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The individual defendants in numerous legal actions arising out of the 1991 riot at the Montana State Prison appeal from an order of the Third Judicial District Court, Powell County, denying their motions for summary judgment which were based on qualified immunity. We dismiss the appeal, award sanctions and remand to the District Court for determination of the amount of the sanctions and for further proceedings.

The dispositive issue on appeal is whether this Court has jurisdiction to consider the appeal.

## BACKGROUND

On September 22, 1991, a riot occurred at the Montana State Prison (MSP). Stated briefly, maximum security inmates breached security devices and systems and took over the Maximum Security Unit (Max). Scores of maximum security inmates were freed from their cells and access was gained to inmates housed in the Max in "protective custody" for the purpose of safeguarding them from perceived risks of harm from other inmates. Five protective custody inmates were killed and attempts were made to kill eight others, some of whom received serious injuries. Both external and internal investigations were undertaken at the behest of the Montana Department of Corrections (Department), including the "Riot at Max Report," also called the "Schwartz Report," and the "Gooch Report." The results of

the investigations generally were not favorable to the manner in which prison employees operated the Max.

Substantial litigation ensued, including the negligence and civil rights cases underlying this appeal. In these cases, brought by the estates of deceased protective custody inmates and by surviving protective custody inmates, the State of Montana is the primary defendant in negligence claims against employees at the MSP, on a *respondeat superior* basis; individual supervisory employees and the Department are the defendants in civil rights claims brought under 42 U.S.C. § 1983. The thrust of the § 1983 actions is the alleged breach by the individual defendants of their constitutional duty to use reasonable care to ensure the safety of incarcerated inmates. Both the plaintiffs and the defendants filed and briefed numerous motions and the District Court heard oral argument.

On July 15, 1996, the District Court entered an Opinion and Order on Pending Motions. Among other rulings, the court determined that the final conclusions in the Schwartz Report and the Gooch Report were admissible into evidence and that the authors of those reports were qualified to testify as experts in their respective fields of prison administration and personnel administration. The court also granted the plaintiffs' motion for summary judgment on liability, concluding that reasonable minds could reach only one conclusion--namely, that the defendants' breach of their duty to safely operate the Max directly contributed to the riot and the resulting damages and injuries. Finally, the District Court denied the individual defendants' motions for summary judgment on the § 1983 claims,

3

which were based on qualified immunity. In the latter regard, it concluded that questions of fact existed as to the defendants' knowledge of the substantial risk of harm to the protective custody inmates in the Max at the time of the riot and the obviousness of the risk, and that these questions relating to the reasonableness of the defendants' conduct must be resolved by the trier of fact. The individual defendants appeal from the District Court's denial of their qualified immunity-based motions for summary judgment.

Does this Court have jurisdiction to consider this appeal?

The defendants present a number of arguments relating to asserted errors by the District Court in denying their motions for summary judgment. The plaintiffs, however, raise the threshold issue of whether we have jurisdiction to entertain the appeal. We conclude that the appeal is premature and, as a result, we do not have jurisdiction to consider it.

This Court's jurisdiction is set forth in Article VII, Section 2 of the 1972 Montana Constitution. Specifically, Article VII, Section 2(1), vests us with appellate jurisdiction and Article VII, Section 2(3), authorizes us to make rules governing appellate procedure.

The Montana Rules of Appellate Procedure, duly adopted by this Court, govern appeals to this Court from Montana district courts. Rule 1(b)(1), M.R.App.P., expressly provides that an appeal may be taken from a final judgment entered in an action in a district court. A final judgment is one wherein a final determination of the rights of the parties has been made; any decree which leaves matters undetermined is interlocutory in nature and not a final judgment for purposes of appeal. Kirchner v. W. Mont. Mental Health Ctr. (1993),

4

261 Mont. 227, 229, 861 P.2d 927, 929 (citations omitted). Although the defendants do not address the matter, it is inarguable that the District Court's order denying the defendants' motions for summary judgment left matters unresolved. Moreover, it has long been the law in Montana that an order denying a motion for summary judgment is not a final judgment. *See* Brown v. Midland Nat. Bank (1967), 150 Mont. 422, 429, 435 P.2d 878, 881-82. Thus, it is clear that the defendants' appeal to this Court is not an appeal from a final judgment.

Nor is the defendants' appeal authorized by subsection (2) or (3) of Rule 1(b), M.R.App.P. Those subsections expressly authorize appeals from specified interlocutory orders; however, orders denying summary judgment are not included in the delineated orders from which an appeal can be taken. *See* Rules 1(b)(2) and (3), M.R.App.P.

Pursuant to the Montana Rules of Appellate Procedure, therefore, the defendants' appeal is premature. A premature appeal must be dismissed for lack of jurisdiction. Kirchner v. Western Montana Mental Hlth. (1995), 272 Mont. 110, 112-13, 899 P.2d 1102, 1104; Kirchner, 861 P.2d at 929; In re Marriage of Rex (1982), 199 Mont. 328, 330, 649 P.2d 460, 461.

The defendants do not address Montana law regarding the appealability of the District Court's order denying their motions for summary judgment based on qualified immunity in any fashion. Rather, they contend that "the record is ripe for appeal" and that federal authority establishes the appealability of at least a portion of the District Court's order. We address the contentions in turn.

5

We observe, initially, that the defendants cite to no authority in support of their "ripe for appeal" contention. The reason, of course, is that no such authority exists. The fact that, in the defendants' view, the current record "may easily be reviewed by this Court" is irrelevant to the issue of whether the District Court's order denying motions for summary judgment is appealable at this time, thus vesting jurisdiction in this Court to entertain the appeal. Indeed, the defendants' suggestion that a record "ripe for appeal" or "easily reviewable" somehow renders an order entered on that record appealable--carried to its logical extreme--would totally nullify Rule 1, M.R.App.P., by allowing interlocutory appeals of virtually all interlocutory orders; this is so because the records on which district courts are requested to enter such orders presumably also are "ripe." In short, the defendants' contention in this regard is totally without merit.

Nor is the defendants' assertion of federal authority regarding the appealability of an unfavorable order on a motion for summary judgment based on qualified immunity in a § 1983 action well taken. As background to our discussion of the defendants' position in this regard, we briefly set forth recent federal decisional history regarding the appealability of orders denying qualified immunity in § 1983 civil rights actions.

By 1985, the United States Circuit Courts of Appeals had divided on the issue, with the First, Eighth and District of Columbia Circuits holding that such orders were appealable and the Third, Fifth and Seventh Circuits holding that they lacked jurisdiction over interlocutory appeals of qualified immunity rulings. *Cf.* Krohn v. United States (1st Cir.

6

1984), 742 F.2d 24; Evans v. Dillahunty (8th Cir. 1983), 711 F.2d 828; McSurely v. McClellan (D.C. Cir. 1982), 697 F.2d 309; *with* Forsyth v. Kleindienst (3rd Cir. 1984), 729 F.2d 267; Kenyatta v. Moore (5th Cir. 1984), 744 F.2d 1179; Lightner v. Jones (7th Cir. 1985), 752 F.2d 1251.

The United States Supreme Court resolved the division among the Circuit Courts over the appealability of interlocutory decisions denying qualified immunity to § 1983 defendants in Mitchell v. Forsyth (1985), 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411. There, the federal district court had denied the defendant's motion for summary judgment based on qualified immunity, concluding that the defendant's actions violated clearly established law, and the Third Circuit held that the order was not appealable. Mitchell, 105 S.Ct. at 2811 (citations omitted).

The Supreme Court began its analysis by observing that 28 U.S.C. § 1291, the federal statute delineating the appellate jurisdiction of the Circuit Courts, vested those courts with jurisdiction only from "final decisions" of the federal district courts. Noting that a decision which was "final" within the meaning of § 1291 did not necessarily mean the last order which could possibly be made in a case, the Supreme Court focused on its collateral order doctrine, under which a district court decision is appealable if it falls within

> "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

7

Mitchell, 105 S.Ct. at 2814 (quoting Cohen v. Beneficial Industrial Loan Corp. (1949), 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528, 1536).

The Supreme Court then applied its decisional law interpreting the federal appellate jurisdiction statute to the appealability of the federal district court's denial of the defendant's motion for summary judgment on the basis of qualified immunity. Reiterating the well-established standard of qualified immunity articulated in Harlow v. Fitzgerald (1982), 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396, that a § 1983 defendant is entitled to immunity as long as his or her actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known," the Supreme Court held that an order denying a claim of qualified immunity is an appealable "final decision" under § 1291 to the extent the denial turns on an issue of law, even though it is not a final judgment in the case. Mitchell, 105 S.Ct. at 2814, 2817. Stated more narrowly, the Mitchell Court concluded that the Circuit Courts have jurisdiction to entertain an appeal from a federal district court's denial of qualfied immunity where the basis for the denial is that clearly established law proscribed the defendant's alleged actions. Mitchell, 105 S.Ct. at 2816.

The Supreme Court again addressed the appealability of decisions denying qualified immunity in § 1983 actions in Johnson v. Jones (1995), ___ U.S. ___, 115 S.Ct. 2151, 132 L.Ed.2d 238. The issue was whether the Circuit Courts have jurisdiction to entertain an appeal from an order denying qualified immunity on the basis that the evidence created a genuine issue of fact requiring trial; in that context, the Supreme Court revisited § 1291, the

8

Cohen collateral order doctrine and Mitchell. Johnson, 115 S.Ct. at 2154-56. The Supreme Court affirmed the Seventh Circuit's conclusion that a decision denying qualified immunity because sufficient evidence existed to create a genuine issue of fact requiring trial was not appealable, holding that a defendant entitled to invoke a qualified immunity defense "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." Johnson, 115 S.Ct. at 2159.

> The Ninth Circuit recently followed Mitchell and Johnson, holding that it had
>
> jurisdiction to review the federal district court's decision that the defendants' alleged conduct violated clearly established law, but the collateral order doctrine does not provide appellate jurisdiction to review the district court's decision that genuine issues of material fact exist for trial.

Armendariz v. Penman (9th Cir. 1996), 75 F.3d 1311, 1317. As a result, the Ninth Circuit dismissed the appeal to the extent it raised issues of whether genuine issues of material fact exist, but addressed and reversed the federal district court's decision regarding whether the defendants' alleged conduct violated clearly established law. Armendariz, 75 F.3d at 1328.

In the case presently before us, the individual defendants advance Mitchell and Johnson as authorizing the appealability of at least the "legal portion" of the District Court's order denying summary judgment, that is, the portion of the denial of summary judgment relating to whether their alleged conduct violated clearly established law. They point out that the Ninth Circuit has followed those Supreme Court opinions.

9

The flaws in this argument are both clear and inescapable, however. First, the Supreme Court cases interpret the appellate jurisdiction of the federal circuit courts of appeals under § 1291, the federal statute governing that jurisdiction, and its own cases thereunder. However, the federal jurisdictional statute is unrelated to the sources of this Court's appellate jurisdiction which, as set forth above, are the Montana Constitution and the Montana Rules of Appellate Procedure duly adopted thereunder by this Court. Nor have we adopted a collateral order doctrine in interpreting Rule 1(b)(1), M.R.App.P., as the Supreme Court has done in interpreting the federal appellate jurisdiction statute. As discussed above, the sources of this Court's appellate jurisdiction do not vest us with jurisdiction to entertain an appeal from an order denying motions for summary judgment which were based on qualified immunity.

Moreover, with regard to the defendants' reliance on Armendariz, it is hardly surprising that the Ninth Circuit would follow the Supreme Court's interpretations of the federal appellate jurisdiction statute; it is duty bound to do so. We are not so bound, since our appellate jurisdiction rests on Montana law.

We note that other state courts have addressed the appealability of orders such as the one at issue here in light of the Supreme Court's decisions. Some courts have concluded that they either should or must be bound thereby. See, e.g., Anderson v. City of Hopkins (Minn. 1986), 393 N.W.2d 363 (accepting the Mitchell Court's reasoning in construing its own appellate jurisdiction, without determining whether Mitchell mandates such a result); McLin

10

v. Trimble (Okla. 1990), 795 P.2d 1035 (concluding that, while <u>Mitchell</u> is a mandate to state courts, the Supremacy Clause cannot create jurisdiction in a state appellate court where it does not otherwise exist and, as a result, exercising its original jurisdiction). Other state courts have rejected the proposition that <u>Mitchell</u> (or its progeny) has any effect on their state appellate procedure. *See, e.g.,* Klindtworth v. Burkett (N.D. 1991), 477 N.W.2d 176 (concluding that state appellate jurisdiction sources dictate the outcome of the appealability issue and, on that basis, dismissing an appeal from an order denying a qualified immunity-based summary judgment motion); Noyola v. Flores (Tex. App. 1987), 740 S.W.2d 493; Civil Service Emp. Ass'n v. Moritz (Ohio App. 1987), 529 N.E.2d 1290.

As noted above, the defendants in this case advanced no arguments pursuant to which their appeal was properly before us under Montana law. Similarly, they advance no arguments under which we either should, or must, be bound by the Supreme Court's <u>Mitchell</u> and <u>Johnson</u> holdings with regard to the appealability of the order at issue here. Since the defendants have failed to do so and, as a result, have failed to establish that we have jurisdiction over this appeal, we decline to address the question further.

One final note with regard to the individual defendants' appeal is appropriate. The defendants' notice of appeal from the District Court's denial of their motions for summary judgment was filed on August 15, 1996. In the notice, the defendants request that "[i]n the event the Montana Supreme Court deems applicable or preferable a procedure other than an appeal, Defendants respectfully request the Montana Supreme Court treat their notice of

11

appeal as an application to invoke the designated procedure." This appears to be a suggestion that we should determine for the defendants whether some procedure other than an appeal is appropriate here and, if so, then somehow convert their notice of appeal, and briefs on appeal, into documents appropriate to such an alternative procedure. It is not this Court's job to do so. A notice of appeal filed by counsel on behalf of a party is precisely that; it is a notice that the party is bringing an appeal pursuant to the Montana Rules of Appellate Procedure. It is the party's obligation to support the appeal jurisdictionally, procedurally and on the merits. Correspondingly, it is not for this Court to be an advocate for a represented party by negating the judgments made by counsel as to the proper procedural mechanism for bringing a matter before this Court. Moreover, as counsel is aware, alternative means of proceeding before this Court arise under a jurisdictional source separate from that governing an appeal and are governed by different rules and requirements. *See, e.g.,* Article VII, Section 2(2) of the Montana Constitution; Rule 17, M.R.App.P.; Plumb v. Fourth Jud. Dist. Court (Mont. 1996), 927 P.2d 1011, 53 St.Rep. 1187. We cannot, and will not, cavalierly disregard such matters on behalf of a party or construct the arguments by which the party might seek alternative review by this Court. Suffice it to say that this appeal has delayed for nearly a year litigation regarding the riot which occurred six years ago and we have addressed it as it was presented.

We hold that the appeal from the District Court's order denying the defendants' qualified immunity-based motions for summary judgment must be dismissed.

12

As a final matter, the plaintiffs have requested sanctions under both federal standards and Rule 32, M.R.App.P. While their request is supported by substantive arguments, we need not address those arguments.

Under Rule 32, M.R.App.P., we may award appropriate damages as a sanction where we are "satisfied from the record and the presentation of the appeal in a civil case that the same was taken without substantial or reasonable grounds[.]" As discussed above, the defendants advanced no arguments pursuant to which we would, or arguably might, have had jurisdiction to entertain their appeal. If no arguments were available to support the appealability of the order at issue, the appeal is frivolous and should not have been filed. If arguments were available, the defendants were obliged to make them; they did not.

We will not permit parties to unnecessarily delay litigation, especially litigation of the magnitude and importance of the litigation underlying this appeal, with impunity. Indeed, one of the concerns regarding appealability of orders like the one at issue here is that appealability may permit § 1983 defendants to

> ossify civil rights litigation. Defendants may defeat just claims by making suit unbearably expensive or indefinitely putting off the trial. A sequence of pre-trial appeals not only delays the resolution but increases the plaintiffs' costs, so that some will abandon their cases even though they may be entitled to prevail. Although it is important to protect public officials from frivolous claims and burdens of trial, it is also important to curtail the outlay and delay of litigation, so that victims of official misconduct may receive the vindication that is their due.

Yates v. City of Cleveland (6th Cir. 1991), 941 F.2d 444, 449 (citations omitted).

13

On the basis of the presentation of this appeal, we are satisfied that it was taken without substantial and reasonable grounds. Therefore, we award the plaintiffs reasonable attorney fees and costs incurred in defending this appeal and reasonable delay damages under Rule 32, M.R.App.P., to be determined by the District Court.

This appeal is dismissed and the case remanded to the District Court for determination of the amount of the Rule 32, M.R.App.P., damages awarded herein and for further proceedings.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

14