No. 99-186

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 39

298 Mont. 287

995 P. 2d 982

IN THE MATTER OF B.P. and A.P.,

Youths in Need of Care.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable W. Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Timothy J. Whalen; Whalen & Whalen, Billings, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Jennifer Anders,

Assistant Attorney General; Helena, Montana

Matt C. Putzier, Deputy Gallatin County Attorney;

Bozeman, Montana

Leanne M. Schraudner; Schraudner & Hillier, Bozeman,

Montana (for father)

Submitted on Briefs: December 2, 1999

Decided: February 15, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1.Ronda Pavek (Ronda) appeals from the findings of facts, conclusions of law and order entered by the Eighteenth Judicial District Court, Gallatin County, granting the petition of the Montana Department of Public Health and Human Services (Department) for temporary investigative authority and protective services relating to her minor children, B. P. and A.P. We affirm.

¶2.We address the following issues:

¶3. May an appeal be taken from a district court's order granting temporary investigative authority and protective services?

¶4. Did the District Court err in ordering protective services for B.P. and A.P. and in removing them from Ronda's home?

¶5. Did the District Court err in refusing to remove the guardian ad litem?

¶6. Did the District Court violate Ronda's Fifth Amendment rights under the United States Constitution?

¶7. Did the District Court infringe on Ronda's constitutional right of religious freedom?

BACKGROUND

¶8.On January 15, 1999, a petition for temporary investigative authority (TIA) and protective services regarding B.P. and A.P. was filed in the District Court on the Department's behalf. The petition alleged that nine-and-one-half-year-old B.P. and five-and-one-half-year-old A.P. were being harmed or threatened with harm affecting their health or welfare. It was based on referrals from concerned citizens beginning in 1996--and increasing in seriousness and frequency--and on an attached report from social worker Joseph E. Albro (Albro). According to the petition, the referrals centered on "extremely inappropriate behavior" of both the children and Ronda, who is divorced from the children's father, Tim Pavek (Tim), and is their primary legal custodian. Specific concerns were expressed that Ronda's personal mental health issues had prevented the children from receiving adequate parenting and proper psychological and medical attention. According to the Department, the children were showing increasing signs of emotional abuse which might result in irreparable damage absent intervention by the Department.

¶9.The District Court appointed Mary Ann Brown (Brown) as the children's guardian ad litem. Brown was directed to monitor the situation and file a report with the court.

¶10.A hearing on the Department's petition was held on February 4, 1999, and, on February 8, 1999, the District Court entered its findings of fact, conclusions of law and order. In pertinent part, the court determined that--as a result of Ronda's conduct and actions--it was in the children's best interests to be immediately removed from Ronda's home and placed in therapeutic foster care to obtain an accurate assessment of their emotional and mental health. The court also found that the children should be enrolled in public schools to develop social and interaction skills and that Ronda must undergo a complete psychiatric examination before she could visit with the children. The District Court concluded, in pertinent part, that "[t]he Department has presented evidence sufficient and Ronda Pavek stipulated that sufficient evidence exists to support a probably [sic] cause finding that the youths are abused or neglected or are in danger of being abused or neglected, and for the issuance of an order for temporary investigative authority and protective services pursuant to § 41-3-403, M.C.A." Accordingly, the District Court granted the petition for temporary investigative authority and protective services for 90 days. The court also denied Ronda's request that Brown be removed as the children's guardian ad litem.

¶11.Ronda appeals. Additional facts necessary for resolution of the issues before us will be set forth below.

## DISCUSSION

¶12. May an appeal be taken from a district court's order granting temporary investigative authority and protective services?

¶13.The parties in the present case did not directly raise the issue of whether an appeal may be taken from an order granting temporary investigative authority and protective services. Since the issue involves the threshold question of whether we have jurisdiction to entertain an appeal, however, and for the purpose of clarifying that jurisdiction, we examine the issue *sua sponte.*

¶14.This Court's jurisdiction is set forth in Article VII, Section 2 of the 1972 Montana Constitution. Specifically, Article VII, Section 2(1), vests us with appellate jurisdiction and Article VII, Section 2(3), authorizes us to make rules governing appellate procedure.

¶15.Pursuant to the referenced constitutional authority, we adopted the Montana Rules of Appellate Procedure, which govern appeals to this Court from Montana district courts. *See* Matter of Litigation Relating to Riot (1997), 283 Mont. 277, 280, 939 P.2d 1013, 1015. Rule 1(b)(1), M.R.App.P., expressly provides that an appeal may be taken from a final judgment entered in a district court action. A final judgment is one which constitutes a final determination of the rights of the parties; any judgment, order or decree leaving matters undetermined is interlocutory in nature and not a final judgment for purposes of appeal. *Litigation Relating to Riot*, 283 Mont. at 280, 939 P.2d at 1015-16 (citation omitted).

¶16.Subsections (2) and (3) of Rule 1(b), M.R.App.P., on the other hand, provide for appeals from specified interlocutory orders. Accordingly, an appeal from an order delineated in those subsections is properly before this Court. An appeal from an interlocutory order not specified in subsection (2) or (3) of Rule 1(b), M.R.App.P., is premature, however, and must be dismissed for lack of jurisdiction to entertain it. *Litigation Relating to Riot*, 283 Mont. at 281, 939 P.2d at 1016 (citations omitted).

¶17.In an Opinion and Order in Matter of K.H. (1985), 216 Mont. 267, 268, 701 P.2d 720, 721, we indicated that an order for temporary investigative authority may be appealable under Rule 1, M.R.App.P. We also stated, however, that relief "should properly be pursued through a writ of certiorari, habeas corpus, or supervisory control." *Matter of K. H.*, 216 Mont. at 268, 701 P.2d at 721.

¶18.Our statement in *Matter of K.H.* that an order for temporary investigative authority may be appealable under Rule 1 was not accompanied by analysis or explanation. Thus, it is appropriate to review Rule 1, M.R.App.P., to determine whether orders granting temporary investigative authority and protective services are appealable. Moreover, since Rule 1 has been amended only once since *Matter of K.H.* and the amendments did not relate to the question before us here (*see* Sup. Ct. Order amending Rule 1, M.R.App.P., dated June 16, 1986, effective January 19, 1987), we review the current version of Rule 1, M.R.App.P.

¶19.Rule 1(b), M.R.App.P., sets forth the judgments and orders from which an appeal may be taken in civil cases and provides as follows:

(b) In civil cases a party aggrieved may appeal from a judgment or order, except when expressly made final by law, in the following cases:

(1) From a final judgment entered in an action or special proceeding commenced in a district court, or brought into a district court from another court or administrative body.

(2) From an order granting a new trial; or refusing to permit an action to be maintained as a class action; or granting or dissolving an injunction; or refusing to grant or dissolve an injunction; or dissolving or refusing to dissolve an attachment; from an order changing or refusing to change the place of trial when the county designated in the complaint is not the proper county; from an order appointing or refusing to appoint a receiver, or giving directions with respect to a receivership, or refusing to vacate an order appointing or affecting a receiver; from an order directing the delivery, transfer, or surrender of property; from any special order made after final judgment; and from such interlocutory judgments or orders, in actions for partition as determine the rights and interests of the respective parties and direct partition to be made. In any of the cases mentioned in this subdivision the supreme court, or a justice thereof, may stay all proceedings under the order appealed from, on such conditions as may seem proper.

(3) From a judgment or order granting or refusing to grant, revoking or refusing to revoke, letters testamentary, or of administration, or of guardianship; or admitting or refusing to admit a will to probate, or against or in favor of the validity of a will, or revoking or refusing to revoke the probate thereof; or against or in favor of setting apart property, or making an allowance for a widow or child; or against or in favor of directing the partition, sale, or conveyance of real property, or settling an account of an executor, or

administrator, or guardian; or refusing, allowing, directing the distribution or partition of any estate, or any part thereof, or the payment of a debt, claim, legacy, or distributive share; or confirming or refusing to confirm a report of an appraiser setting apart a homestead.

Beginning with Rule 1(b)(1), it is clear that an order for temporary investigative authority and protective services is not a "final judgment." Indeed, it is ordinarily the first order entered in an abuse and neglect proceeding which ultimately may encompass numerous orders and culminate in an order terminating parental rights. *See* §§ 41-3-401 through 41-3-612*, MCA (1997).

¶20. As discussed and set forth above, Rule 1(b)(2), M.R.App.P., authorizes an appeal from certain specified interlocutory orders. A close review of the specific orders from which an appeal may be taken under Rule 1(b)(2) discloses that those orders do not include an order for temporary investigative authority and protective services. Thus, while we can only speculate about the basis for the Court's statement in *Matter of K.H.*, 216 Mont. at 268, 701 P.2d at 721, that such an order "may be an appealable order within Rule 1," we conclude that Rule 1(b)(2), M.R.App.P., does not authorize an appeal from an order granting temporary investigative authority and protective services.

¶21. Rule 1(b)(3), M.R.App.P., authorizes an appeal from additional specified interlocutory orders. Scrutiny of those delineated orders reveals that they generally relate to probate and estate matters, family allowances, and actions for partition. The only conceivable basis upon which an order for temporary investigative authority and protective services could be appealable under Rule 1(b)(3) is pursuant to the language permitting an appeal from an order "making an allowance for a widow or a child[.]" Given the context in which that phrase appears, however, and that the phrase encompasses both widows and children, we conclude that it relates to allowances for children in probate or estate proceedings and does not authorize an appeal from an interlocutory order granting temporary investigative authority and protective services.

¶22. We hold, therefore, that an interlocutory order granting temporary investigative authority and protective services is not appealable under Rule 1, M.R.App.P.

¶23. In light of the unique circumstances presented here, however, we exercise the authority which the Court has retained under Rule 3, M.R.App.P., to suspend the rules of appellate procedure. Suspension of the appeal parameters set forth in Rule 1 is supported

by factors unique to this case. First, both parties apparently relied upon this Court's statement in *Matter of K.H.* indicating that an order for temporary investigative authority is appealable, since no motion to dismiss this appeal as premature was made. As a result, ten months elapsed between the District Court's order removing the children from Ronda's home and the final submission of this matter to us on appeal, at which time we noted the jurisdictional issue relating to appeal of a TIA order. This represents a significant period of uncertainty in the lives of the children here involved and we are extremely reluctant to have such a lengthy period be for naught, especially given the likelihood of a petition for writ of certiorari, habeas corpus, or supervisory control concerning the same issues presented here should we dismiss this appeal. Therefore, we proceed to consider the merits of the appeal.

¶24.. Did the District Court err in ordering protective services for B.P. and A.P. and in removing them from Ronda's home?

¶25.Ronda concedes that she stipulated to the Department's temporary investigative authority at the hearing on the Department's petition. She asserts error on several bases, however, with regard to the District Court's order for protective services for B.P. and A.P. and for their removal from her home.

¶26.A petition for temporary investigative authority and protective services properly may be filed "[i]n a case in which it appears that a youth is abused or neglected or is in danger of being abused or neglected." Section 41-3-402(1), MCA. The petition must state the authority requested and facts establishing probable cause that the youth is abused or neglected or in danger of being abused or neglected, and must be accompanied by an affidavit or department report stating in detail the facts on which the request is based. Sections 41-3-402(2) and (3), MCA.

¶27.Ronda first asserts that the petition did not allege abuse or neglect or danger of abuse or neglect of the children. At the outset, we observe that nothing in § 41-3-402, MCA, expressly requires an allegation of abuse or neglect. Moreover, while it is true that the Department's petition does not expressly allege "abuse or neglect" or "in danger of being abused or neglected," it does allege that "there is harm or threatened harm to [the children's] health or welfare as defined in Section 41-3-102, MCA[.]" Section 41-3-102(6)(a), MCA (1997), defines child abuse or neglect as "harm to a child's health or welfare" or "threatened harm to a child's health or welfare." Thus, the allegation at issue in the Department's petition merely substituted the statutory definitions for child abuse or neglect

for the words "abuse or neglect." The statute does not require more.

¶28.Ronda next contends that the petition contains conclusory statements which purport to constitute danger of abuse or neglect, but no evidence in support of the statements. However, § 41-3-402(2), MCA, requires only that the petition state the facts establishing probable cause that a child is abused or neglected or in danger of being abused or neglected. There is no statutory requirement that the petition contain the evidence the Department would present in support of its petition. Moreover, Ronda stipulated to probable cause that the children were in danger of being abused or neglected and to the 90-day TIA at the hearing.

¶29.Ronda also argues that her stipulation authorized the District Court to order the TIA but did not authorize protective services for B.P. and A.P. or their removal from her home. As a result, she contends the court was required to rule on the request for protective services based on the evidence of record and the record does not support the need for protective services. After close scrutiny of the record, we agree that Ronda's stipulation was limited to the TIA. We turn, therefore, to the question of whether the record before us contains sufficient evidence to support the District Court's order for protective services and removal of the children from Ronda's home.

¶30.Procedures on a petition for protective services are governed by statute in Montana. The hearing on such a petition focuses primarily on the questions of removal from the home and the children's need for protection, the Department has the burden of establishing probable cause for the issuance of an order of protection, and the court may consider all relevant evidence. *See* § 41-3-403(1)(c), MCA.

¶31.At the hearing on the petition in this case, Brown testified in person and the court's attention was directed to her reports in this case and the parents' dissolution case, which the court observed it had read. Brown had worked with the family as the children's guardian ad litem since January of 1997 and, in her opinion, B.P. and A.P. were both "medically abused" by Ronda via her refusal to allow continued treatment of their attention deficit disorder with hyperactivity diagnoses and her termination of a long list of physicians, psychiatrists, psychologists and counselors whenever they did not agree with Ronda's perspective about the children's care. In addition, Brown documented numerous examples of Ronda allowing B.P. to self-medicate and failing to provide both children with sufficient medications--or advise their father with regard to their medications--when the children visited him.

¶32.Moreover, Brown documented numerous instances of emotional abuse of the children by Ronda. Much of the abuse related to Ronda's attempts to sabotage their visits with their father and to continue to denigrate the father's homosexuality to the children. Indeed, Brown reported that Ronda made repeated, unsubstantiated allegations of physical and sexual abuse of B.P. by Tim and an incident of suspected physical abuse of A.P. by Tim, also unsubstantiated. According to Brown, Ronda repeatedly lied to the children about their father and even told them he was not paying child support when, in fact, he was.

¶33.Brown also was concerned about the children's isolation from the world and Ronda's total control over them. The children are home schooled and have few, if any, friends. The few friendships they had were halted or minimized when Ronda refused to cooperate in getting the children together with their friends.

¶34.Finally, Brown focused on the extreme behavior exhibited by B.P. and A.P. and Ronda's nearly total failure to control, or attempt to control, that behavior. The children act out both verbally and physically in public and are abusive to each other and to bystanders. Their language is inappropriate; they throw things at children, at Brown and at law enforcement personnel; and A.P. hisses like an animal. Delta Airlines will no longer allow the children to fly on their planes to visit their father because of this uncontrollable behavior and the airline's inability to protect either the children or other passengers. In sum, to quote Brown, "these children do not know how to function in a civilized setting."

¶35.Brown made a number of recommendations to the District Court. She recommended therapeutic foster care, psychological evaluations for both children and Ronda, psychiatric therapy for both children, enrollment in a public school or appropriate private school for the children and supervised visitations between Ronda and the children only when Ronda's psychologist believes it is appropriate. The District Court expressly found Brown's testimony to be credible and her recommendations to be in the best interests of the family.

¶36.Dr. James Feist, a pediatrician who had treated B.P. since birth, also testified at the hearing. He expressed substantial concerns about B.P.'s significant behavioral problems, including poor impulse control, very aggressive behaviors, talking out or physically acting out "when crossed," and the like. He related that he had been encouraging monitored day treatment for B.P. all along and that Ronda had resisted. He also had tried medicines on a recurring basis for behavioral control, but Ronda had been resistant to that as well. In addition, Dr. Feist testified that he continued to encourage that B.P. see a child psychiatrist, but Ronda did not agree. He had "no real good feeling" about B.P.'s progress

with behavioral problems, academics or interactions with his young sister, A.P. Dr. Feist was against continued home schooling for B.P. because such a setting did not allow for evaluation and help by trained professionals regarding behavior, academics, and socialization. In Dr. Feist's opinion, B.P. might need therapeutic foster care to get an unbiased view of how he is functioning and to see what level of help he needs.

¶37.The fact that Ronda may have believed when she went into the District Court hearing that she would retain custody of the children in her home during the 90-day TIA to which she stipulated did not preclude the court from ordering otherwise if it concluded that the best interests of the children required such a result. The court had authority under § 41-3-403(3)(d), MCA (1997), to temporarily remove the children from Ronda's home and place them in a temporary medical facility or other facility for their protection, to serve their best interests. This Court has repeatedly recognized that the best interests of the children are paramount and take precedence over parental rights in child abuse and neglect proceedings. *See, e.g.*, Matter of C.M. (1997), 281 Mont. 183, 187, 932 P.2d 1063,1066.

¶38.We hold that the Department carried its burden of establishing probable cause for the issuance of an order of protection, and that the record in this case includes sufficient evidence to support the District Court's order for protective services and removal from Ronda's home.

¶39. Did the District Court err in refusing to remove the guardian ad litem?

¶40.Ronda requested the removal of Mary Ann Brown as guardian ad litem on the basis that Brown was biased and did not have a good relationship with Ronda's children. Ronda argues that the District Court erred in denying her request.

¶41.A guardian ad litem is charged with representing the child's best interests and has the following general duties:

(a) to conduct investigations that the guardian ad litem considers necessary to ascertain the facts constituting the alleged abuse or neglect;

(b) to interview or observe the child who is the subject of the proceeding;

(c) to have access to court, medical, psychological, law enforcement, social services, and school records pertaining to the child and the child's siblings and parents or custodians;

(d) to make written reports to the court concerning the child's welfare;

(e) to appear and participate in all proceedings to the degree necessary to adequately represent the child and make recommendations to the court concerning the child's welfare;

(f) to perform other duties as directed by the court.

Section 41-3-303(2), MCA (1997).

¶42.Ronda has presented no evidence that Brown was not performing the duties of her appointment pursuant to § 41-3-303(2), MCA (1997). Moreover, Ronda's allegations of bias and the absence of a good relationship between Brown and the children are otherwise unsupported in the record, and are controverted by Brown's own testimony that she had a good relationship with B.P. when he was not with Ronda. We hold that the District Court did not err in denying Ronda's request for Brown's removal as guardian ad litem.

¶43. Did the District Court violate Ronda's Fifth Amendment rights under the United States Constitution?

¶44.Ronda argues that the District Court violated her Fifth Amendment privilege against self-incrimination when it ordered her to submit to a psychiatric evaluation, participate in counseling, and follow through with the therapist's recommendations. We disagree.

¶45.The Fifth Amendment to the United States Constitution prohibits a person from being compelled "in any criminal case to be a witness against himself." Nothing of record in this case suggests any criminal liability attending Ronda's participation in counseling. A child abuse and neglect proceeding is not a criminal case.

¶46.In a child abuse and neglect proceeding such as this one, the court is specifically authorized by statute to order medical and psychological evaluations of, and counseling services for, the parents. Section 41-3-403(3)(b) and (c), MCA (1997). We hold that Ronda has not established a violation of her Fifth Amendment rights under the United States Constitution.

¶47. Did the District Court infringe on Ronda's constitutional right of religious freedom?

¶48.Ronda claims that the District Court violated her right to religious freedom by

removing the children from her care and custody and ordering that she not be allowed to see them pending her psychiatric examination. She asserts that the court thus took away her ability to participate in and control the children's religious upbringing. She bases her argument on the principle that termination of a parent's right to care and custody of her children affects a fundamental liberty interest, citing Matter of R.B. (1985), 217 Mont. 99, 103, 703 P.2d 846, 848.

¶49.The District Court did not terminate Ronda's parental rights in the proceeding presently on appeal. It merely entered a TIA order, to which Ronda stipulated, and ordered temporary protective services in the children's best interests. In a child abuse and neglect proceeding, the best interests of the children take precedence over parental rights. *Matter of C.M.*, 281 Mont. at 187, 932 P.2d at 1066.

¶50.There is no evidence in the record to suggest that the District Court was hostile to Ronda's religious views or that its order was in any way based upon those views. Rather, the record indicates that the court's order was based upon evidence that the children were emotionally disturbed and threatened with harm. The court temporarily restricted Ronda's access to the children and ordered that they be enrolled in public schools to allow them to develop social skills, learn how to interact with other children, and have their behavior easily observed. Meanwhile, Ronda remains free to pursue her religious beliefs. We conclude that Ronda has not established an infringement on her constitutional right to religious freedom.

¶51.Affirmed.

/S/ KARLA M. GRAY

We concur:

S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER