**SHEARA BRYANT, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, et al., Appellee/Plaintiff**

S. Ct. Civ. No. 2008-061
Supreme Court of the Virgin Islands
January 15, 2010

CLIVE RIVERS, ESQ., St. Thomas, USVI, *Attorney for Appellant/Defendant.*

TERRYLN SMOCK, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee/People of the Virgin Islands.*

GERIANNE KOTAS, ESQ., St. Thomas, USVI, *Attorney for Appellee Fitzroy Liburd.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(January 15, 2010)

CABRET, J. The appellant, Sheara Bryant, is the mother of three young children. After receiving several reports concerning the children's welfare, the Virgin Islands Department of Human Services ("DHS") visited Bryant's home to investigate the matter. The visit revealed conditions that the officials believed posed an imminent danger of serious injury to the children, and the following day DHS took the children into its emergency custody. The People of the Virgin Islands subsequently filed a petition for temporary emergency custody of the children, which,

following a hearing, the Superior Court granted. This appeal ensued. Because we find that the Superior Court's temporary custody order is an interlocutory order not subject to immediate review, the appeal is dismissed for lack of jurisdiction.

## I. FACTS AND PROCEDURAL BACKGROUND

The record shows that Bryant is the mother of three children: T.I., born on November 27, 2000; H.I., born on July 23, 2004; and U.I., born on April 22, 2007. Since 2006, DHS has received numerous reports concerning the children's welfare. When DHS was notified that Bryant was unlawfully living in a home owned by the Housing Finance Authority, a social worker scheduled a visit to the home for May 1, 2008. On that day, individuals from several government agencies visited the home. Bryant and her children were not there. The visitors nonetheless inspected the property and found conditions leading them to believe that the children were being neglected. The following day, DHS took the children into emergency custody and had them examined by a physician. The results of the examination also caused DHS to believe that the children were being neglected, and in one instance, abused.

On May 5, 2008, the People filed a Petition for Emergency Custody pursuant to title 5, section 2544 of the Virgin Islands Code. In the Petition the People alleged that the children were being neglected and asked the court to adjudge them as such and to find them in danger of serious harm. The People requested that DHS be awarded "temporary legal custody" of the children. (J.A. II at 404.)

On June 9, 2008, the Superior Court held an evidentiary hearing to determine if probable cause existed to believe that the children were being neglected and in imminent risk of serious injury.[1] The mother was represented by counsel, and the children were represented by a guardian *ad litem*. The Superior Court heard testimony from six of the People's witnesses, two of the children, and Bryant. Following the hearing, the Superior Court found that the children were being neglected. On June 18, 2008, the court entered an order providing, in pertinent part:

---

[1] Although the hearing should have been held within ten days of the children being taken into custody, *see* V.I. CODE ANN. tit. 5, § 2544(d) (1997), it appears that the delay in this case was at least partially due to Bryant's request for a continuance to obtain substitute counsel.

1. Temporary legal and physical custody of [the children] shall remain with [DHS].
2. [Bryant] shall have weekly supervised visits with the minors.
3. [DHS] shall perform an expedited inspection of [Bryant's home].
4. [DHS] shall submit a written report of its findings no later than June 20, 2008 . . . .
5. [Bryant] shall seek gainful employment and shall submit proof of same.
6. [DHS] shall schedule and shall complete a psychological evaluation of [Bryant] . . . by no later than July 25, 2008 and shall submit [the] report no later than August 15, 2008.
7. [Bryant] shall cooperate . . . to complete the psychological evaluation.
8. [Bryant] may also seek an independent evaluation within 30-60 days after [the court ordered psychological report is filed].

 . . . .

10. This matter shall come on for a review hearing on Wednesday September 10, 2008 . . . .[2]

(J.A. I at 6-7.) (Footnote added). Bryant filed the instant, direct appeal from that order.

In her appellate brief, Bryant asserts that the Superior Court erred in considering evidence obtained when government officials entered the property where she was staying because that evidence was obtained in violation of her Fourth Amendment right to be free from unreasonable searches and seizures. Bryant also asserts that the Superior Court violated her substantive and procedural due process rights in granting temporary

---

[2] Although the issue is not before the Court because we lack jurisdiction to review the Superior Court's order, we note our concern that the Superior Court scheduled a "review hearing" for September 10, 2008. As is explained in this Opinion, the Superior Court is required to conduct an "[a]djudicatory hearing[ ] . . . within ninety (90) days after the filing of a petition or complaint . . . ." 5 V.I.C. § 2548(a) (1997). *Compare* 5 V.I.C. § 2554(c) (1997) (providing in pertinent part that "[t]he status of all children removed from their home shall be reviewed at least once every six months *following the initial dispositional order* by which the child was removed.") (Emphasis added.)

custody to DHS because the evidence did not establish probable cause that her children were in imminent danger of serious injury.

## II. DISCUSSION OF THIS COURT'S JURISDICTION

■ This Court's jurisdiction to review the Superior Court's order is governed by title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." Section 32 embodies the final judgment rule, which generally requires a party "to raise all claims of error in a single appeal following final judgment on the merits." *Enrietto v. Rogers Townsend & Thomas PC*, 49 V.I. 311, 315 (V.I. 2007) (citations and punctuation omitted).

■ As we explained in *Enrietto*, the final judgment rule serves numerous goals:

> The final judgment rule promotes efficient judicial administration and emphasizes the deference appellate courts owe to trial court decisions on the many questions of law and fact that arise before judgment. Another purpose of the rule is to avoid the delay that inherently accompanies time-consuming interlocutory appeals. Immediate review of every trial court ruling, while permitting more prompt correction of erroneous decisions, would impose unreasonable disruption, delay, and expense. It would also undermine the ability of trial court judges to supervise litigation. The rule, therefore, is intended to delay immediate review of many interlocutory trial court decisions and avoid piecemeal appellate review of trial court decisions which do not terminate the litigation.

*Id.* (citations and quotation marks omitted).

■ The concept of "finality" for purposes of the final judgment rule is well-settled.

> In *Catlin v. United States*, 324 U.S. 229, 233, 65 S. Ct. 631, 89 L. Ed. 911 (1945), the Supreme Court defined a "final decision" for purposes of appeal "generally [as] one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Interpreting *Catlin*, [the Court of Appeals for the Third Circuit has] described a final decision as " 'one which disposes of the whole subject,

gives all the relief that was contemplated, provides with reasonable completeness for giving effect to the judgment and leaves nothing to be done in the cause save to superintend, ministerially, the execution of the decree.' "

*Penn W. Assocs., Inc. v. Cohen*, 371 F.3d 118, 125 (3d Cir. 2004) (emphasis omitted) (quoting *Isidor Paiewonsky Assocs., Inc. v. Sharp Props., Inc.*, 998 F.2d 145, 150, 28 V.I. 448 (3d Cir.1993)); *accord Est. of George v. George*, 50 V.I. 268, 274 (V.I. 2008) ("The general rule is that a decision is considered final when it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " (quoting *Berke v. Bloch*, 242 F.3d 131, 134 (3d Cir. 2001))).

Considering these well established principles of finality, it is clear that the Superior Court's order in this case is not a final judgment. The Superior Court's award of temporary custody was entered pursuant to a comprehensive statutory scheme which provides for immediate consideration of petitions for emergency, temporary custody and requires expedited final adjudication of whether the children are being abused or neglected. Under this scheme, an authorized person can remove a child from the home if there is "probable cause to believe that the child is neglected or abused," and the child's life or health is in "imminent danger." 5 V.I.C. § 2544(b). Within two days of removing the child from the home, DHS is required to file a petition with the Superior Court explaining the "the specific circumstances justifying the taking of emergency temporary custody and the specific measures implemented to safeguard the physical and emotional well-being of the child." 5 V.I.C. 2544(c). The Superior Court is required to immediately hold an informal hearing to establish whether the child should remain in emergency temporary custody, and within ten days "hold a hearing to determine whether there is probable cause to believe that the child is neglected or abused and the child is in imminent risk of death or serious injury and that removal is necessary until a final order of disposition." 5 V.I.C. § 2544(c), (d).

■ The custody order being appealed from in this case was issued by the Superior Court following the probable cause hearing required by section 2544(d). But again, the order only provides for the children's temporary custody, and the statutory scheme requires an expedited adjudicatory hearing and dispositional hearing after the temporary order

is issued. Specifically, the Superior Court is required, absent good cause, consent of the parties, or a continuance in contemplation of dismissal, to conduct an adjudicatory hearing "within ninety (90) days after the filing of a petition or complaint." 5 V.I.C. § 2548(a). Following the adjudicatory hearing, the Superior Court has but two options. First, "[i]f the court finds the allegations in the complaint or petition have not been established, it shall dismiss the complaint or petition and order the child discharged from any shelter care or emergency temporary care heretofore ordered in the proceeding." 5 V.I.C. § 2548(c). Second, and alternatively, if the Superior Court finds "clear and convincing evidence" of neglect or abuse, it must conduct a dispositional hearing to determine which of several placement options to impose.[3] 5 V.I.C. §§ 2548(d), 2549. The dispositional hearing may, upon consent of the parties, be held immediately following the finding of abuse or neglect, or may be continued "for a reasonable period, not to exceed thirty days, except for good cause shown, to receive reports and other evidence bearing on the disposition of the complaint or petition." 5 V.I.C. § 2548(e).

 A plain reading of this statutory scheme reveals that the Legislature did not intend for the temporary custody order issued after the probable cause hearing to be a final adjudication. *See generally, In re Laney*, 156 N.C. App. 639, 577 S.E.2d 377, 379 (2003) (concluding that statutory language did not show that the general assembly intended for immediate appeal from temporary dispositional order); *In re B.P.*, 298 Mont. 287, 292, 995 P.2d 982, 986 (2000) (citing to child neglect statutory

---

[3] We note that in *In re Horsford*, 22 V.I. 174, 176 (D.V.I. App. Div. 1986), the Appellate Division ruled that after the adjudicatory hearing, the "court must either declare the child abused or neglected, *continue the case* or dismiss it." (Emphasis added). It appears that in ruling that the court may continue the case, the Appellate Division relied on a Code provision which generally defines the term " 'Adjudicatory hearing' " as that term is used in child delinquency and neglect proceedings. *See id.* (citing 5 V.I.C. § 2502(3)). Section 2502(3) provides: " 'Adjudicatory hearing' means a hearing conducted in accordance with sections 2517 and 2548 of this chapter in which the court makes its findings of fact and enters an appropriate order dismissing the case, withholding adjudication, or adjudicating the child to be a delinquent child, person in need of supervision, an abused or neglected child." While a court is specifically authorized to withhold adjudication following an adjudicatory hearing in a delinquency proceeding, 5 V.I.C. § 2519, there is no provision in our Code which permits a court to withhold adjudication and continue a case following an adjudicatory hearing in a child neglect proceeding. Thus, notwithstanding the Appellate Division's ruling in *Horsford*, which was not necessary to its decision, after an adjudicatory hearing in an abuse or neglect proceeding, the court must either declare the child abused or neglected or dismiss the case.

scheme and observing that "it is clear that an order for temporary investigative authority and protective services is not a 'final judgment.' Indeed, it is ordinarily the first order entered in an abuse and neglect proceeding which ultimately may encompass numerous orders and culminate in an order terminating parental rights."); *Craft v. Craft*, 579 S.W.2d 506, 510-11 (Tex. Civ. App. 1979) (analyzing legislative intent in determining that temporary custody order was not appealable). Again, the Legislature provided for an expedited adjudicatory hearing on the child neglect petition, and the temporary custody question at the probable cause stage of the proceedings is limited by section 2544 to a determination of whether "removal is necessary until a final order of disposition." 5 V.I.C. § 2544(d). Indeed, if the Superior Court were to dismiss the petition following the adjudicatory hearing, as provided in section 2548(c), the children would be discharged from the temporary care of DHS, and the issues Bryant raises in this appeal could well be mooted.[4] Furthermore, characterizing the temporary custody order as a final judgment subject to immediate review would only frustrate the purposes of the final judgment rule by inviting piecemeal review and unreasonably delaying the intended expedited adjudication of the neglect petition under the strict statutory timeline established by the Legislature. For these reasons, we conclude that the temporary custody order at issue is not a final judgment subject to immediate review under title 4, section 32(a).

■ Having concluded that the custody order does not constitute a final judgment, we must also consider whether it qualifies for immediate review under an exception to the final judgment rule. We conclude that it does not. One such exception created by the Legislature is for "[i]nterlocutory orders of the Superior Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions . . . ." 4 V.I.C.

---

[4] Because the issue of mootness is not before the Court, we render no opinion as to whether the issues would, in fact be mooted. We merely wish to point out that many of the concerns raised by Bryant in her appellate brief would be allayed if the Superior Court were to dismiss the petition following the adjudicatory hearing, and that, insisting on a final judgment "saves an appellate court from deciding issues that may later be mooted by proceedings in other courts, thereby avoiding unnecessary appeals." *In re Erica B.*, 520 A.2d 342, 343 (Me. 1987) (citing *State v. Maine State Employees Association*, 482 A.2d 461, 464 (Me.1984)).

§ 33(b)(1) (Supp. 2007). To determine whether an interlocutory order is injunctive and, therefore, subject to immediate appeal, we apply the three-part test recently recognized in *Enrietto*: "The order must be (1) directed to a party; (2) enforceable by contempt; and (3) designed to accord or protect some or all of the substantive relief sought by a complaint in more than a temporary fashion." *Enrietto*, 49 V.I. at 316 (citation and quotation marks omitted). Inasmuch as the temporary custody order is neither enforceable by contempt nor designed to afford the substantive relief sought in the petition in more than a temporary fashion, it cannot be characterized as an injunction subject to immediate review.[5]

■ Another exception to the final judgment rule applies to interlocutory orders which have been certified by the trial court for immediate review. Under this exception

> Whenever the Superior Court judge, in making a civil action or order not otherwise appealable under this section, is of the opinion that the order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of litigation, the judge shall so state in the order. The Supreme Court of the Virgin Islands may thereupon, in its discretion, permit an appeal to be taken from the order, if application is made to it within ten days after the entry of the order . . . .

4 V.I.C. § 33(c) (Supp. 2007). Bryant attempts to invoke this exception arguing: "the lower court's Order awarding temporary legal and physical custody of Appellant's minor children to DHS was an appealable interlocutory order because there existed a controlling question of law as to which there is substantial ground for difference of opinion." (Appellant's Reply Br. 3.) It appears, however, that the Superior Court never certified the order for immediate review as a required by section 33(c), and without the trial judge's certification, "a civil interlocutory appeal cannot ensue." *In re Le*

---

[5] While section 33(b) also permits immediate review from interlocutory orders appointing receivers, the custody order at issue cannot be construed as fitting within this exception. In *Enrietto*, we also recognized the collateral order exception to the final judgment rule. *See Enrietto*, 49 V.I. at 319. However, in this case there is no plausible argument that the order at issue is a collateral order subject to immediate review, and Bryant has not argued as such.

*Blanc*, 49 V.I. 508, 523 (V.I. 2008) (citing *Commonwealth Ins. Co. v. Underwriters, Inc.*, 846 F.2d 196, 199 (3d Cir.1988)).

 Although we conclude that the temporary custody order at issue here is interlocutory and not subject to immediate appeal, our conclusion begs the question of when such an order may be directly appealed as a matter of right. In answering this question, we cannot blindly rely on the final judgment rule, because finality under the statutory scheme is an elusive concept that may not be realized until a significant time has elapsed, perhaps years, during which the parent has been separated from his or her child. *See* 5 V.I.C. § 2554 (providing that a dispositional order under which a child has been removed from the home does not automatically expire at the end of one year and may be extended by the court under certain circumstances).[6] The interests of the child, the rights surrounding the parent-child relationship, and the purposes of the child abuse statutes are far too important to allow the child to be placed outside the family home for many months, if not years, with no right to appeal, and we do not believe the Legislature intended such a delay. *See generally*, *Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 2060, 147 L. Ed. 2d 49 (2000) (recognizing that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children"); 5 V.I.C. § 2532 (1997) ("The public policy of this territory is to protect children whose health and welfare may be adversely affected through abuse and neglect; to strengthen the family and to make the home safe for children by enhancing the parental capacity for good care; to provide a temporary or permanent nurturing and safe environment for children when necessary; and for these purposes to require the reporting of child abuse, investigation of such reports, and provision of services when needed by the child and family.").

In light of these considerations, and considering that section 2548 requires an expedited final adjudication and dispositional hearing, we conclude that a parent has a right to appeal following the Superior Court's dispositional order issued pursuant to title 5, section 2549 of the Virgin Islands Code. At this stage of the neglect proceedings, the Superior Court

---

[6] Because the issue is not before us, we render no opinion as to the outer limits of how long a dispositional order may authorize a child to be removed from the home without terminating the parental rights.

will have definitively decided the issue of neglect or abuse by clear and convincing evidence and determined the important questions concerning the child's custody. We believe that a right to direct appeal at this time is consistent with goals of the final judgment rule expressed in *Enrietto*, 49 V.I. at 315, the concept of finality articulated by the Third Circuit in *Penn W. Assoc.*, 371 F.3d at 125, and the Legislature's intent that adjudications of neglect and abuse, and the dispositional questions that follow, be quickly decided by the Superior Court.[7]

## III. CONCLUSION

For the stated reasons, we will dismiss this appeal for lack of jurisdiction. The Superior Court's temporary custody order does not finally adjudicate the issue of neglect, much less the disposition of the children following such an adjudication, and it is not the type of interlocutory order which may be immediately appealed. Appellate consideration of the court's temporary order, where the Legislature has provided for an expedited final adjudication and dispositional hearing, would merely delay the adjudication and disposition, invite piecemeal appellate review, and could severely hamper the Superior Court's ability to quickly reach a final resolution.

▮ Our conclusion that a parent must await final adjudication and the dispositional ruling of the Superior Court before appealing as of right is in furtherance of the Legislature's goal that the Superior Court

---

[7] We note that this result is consistent with numerous other jurisdictions which also permit a first right to appeal from a dispositional order in neglect or abuse proceedings, whether that right is conferred by statute or judicial decision. *See, e.g.*, COLO. REV. STAT. § 19-1-109(2)(c) (West 2009) ( "An order decreeing a child to be neglected or dependent shall be a final and appealable order after the entry of the disposition pursuant to section 19-3-508. Any appeal shall not affect the jurisdiction of the trial court to enter such further dispositional orders as the court believes to be in the best interests of the child."); N.C. GEN. STAT. § 7B-1001(a)(3) (West 2009) ("Only the following juvenile matters may be appealed . . . . (3) Any initial order of disposition and the adjudication order upon which it is based."); VA. CODE ANN. § 16.1-278.2(D) (West 2009) ("A dispositional order entered pursuant to this section is a final order from which an appeal may be taken in accordance with § 16.1-296"); *In re Erica B.*, 520 A.2d at 344-45 (suggesting that right to appeal will lie following final adjudication and dispositional hearing); *But see In re A.C.*, 827 N.E.2d 824, 829 (Ohio Ct. App. 2005) ("mother could appeal from the ruling in the adjudicatory hearing either after that hearing or after the case was disposed of by the dispositional hearing."). *See also generally*, Kurtis A. Kemper, Annotation, *Appealability of Interlocutory or Pendente Lite Order for Temporary Child Custody*, 82 A.L.R. 5TH 389 (West 2009).

expediently adjudicate neglect and abuse petitions. Because the best interests of the child and the rights of the parent hang in the balance, such expedience requires strict compliance with timeline established by the statutory scheme.[8] We do not visit here what remedies lie in store when strict adherence is not the case.

---

[8] *See In re Horsford*, 22 V.I. at 177 ("In enacting the abuse procedures, the legislature recognized that these matters involve the highest of stakes. Consequently, the applicable laws must be strictly followed by the family court.")