**FRANK C. POLLARA and F.C. POLLARA GROUP, LLC,**
**Appellants/Plaintiffs**

**v.**

**CHATEAU ST. CROIX, LLC and ROBERT NEAL,**
**Appellees/Defendants**

S. Ct. Civ. No. 2010-0026

Supreme Court of the Virgin Islands

June 14, 2013

456

Lee J. Rohn, Esq., Law Offices of Rohn & Carpenter, LLC, St. Croix, USVI, *Attorney for Appellants*.

KEVIN A. RAMES, ESQ., K. A. Rames, P.C., St. Croix, USVI, *Attorney for Appellees.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; SWAN, *Associate Justice.*

## OPINION OF THE COURT

(June 14, 2013)

SWAN, *Associate Justice.* Appellant Frank C. Pollara urges this Court to reverse the trial court's dismissal of his Complaint against the Appellee, Chateau St. Croix, LLC ("Chateau"), and to reverse the trial court's grant of summary judgment on Chateau's counterclaim. First, Pollara argues that the trial court erred in its application of law when it dismissed his Complaint with prejudice for failure to prosecute and for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6). Second, he argues that the trial court erred as a matter of law in granting summary judgment on Chateau's counterclaim, awarding Chateau $100,000.00 in damages upon a finding that Pollara breached a contract for sale of property. Pollara also argues that the trial court erred when it denied his motion to reconsider these decisions.

We conclude that the trial court abused its discretion when it imposed the extreme sanction of dismissing Pollara's Complaint with prejudice for failure to prosecute. Upon examination of the allegations and applicable pleading standards, we also conclude that the trial court erred in finding that the Complaint failed to state a claim upon which relief may be granted. Additionally, we conclude that the trial court erred in granting summary judgment and awarding damages to Chateau because the trial record presents genuine issues of material fact as to one or more elements of its counterclaim. Finally, we conclude that the trial court abused its discretion in failing to reconsider its orders dismissing the Complaint and granting summary judgment. Therefore, we reverse the decisions of the trial court and remand the case to the trial court to conduct proceedings consistent with our Opinion.

## I. FACTS AND PROCEDURAL HISTORY

On March 1, 2006, Pollara entered into a contract to purchase from Chateau the property known as Chateau St. Croix, which is the St. Croix-By-The-Sea Hotel ("the property"). (J.A. at 84.) The purchase price

458

for the property was $2,000,000.00. (*Id.*) The details of the purchase price were outlined in the terms of the contract, which includes the following provisions:

> DEPOSIT: Buyer [will] make an earnest money deposit with Lawyers Title Insurance Corporation, 14802 North Dale Mabry Highway, Tampa, FL 33618, a sum of One Hundred Thousand and no/100 dollars ($100,000.00) within twenty-four (24) hours of the effective dates. The earnest money deposit will be credited against the sales price of $2,000,000.00.
>
> DOWNPAYMENT: Buyer gives $1,000,000.00 as a down payment of which $100,000.00 earnest money deposit will be credited. Balance of $900,000.00 down payment will be paid at closing by cashier's check or certified funds acceptable to Seller. The balance of $1,000,000.00 will be financed by Seller.

(J.A. at 84.) The sale was scheduled to close on March 31, 2006. (*Id.*) On March 6, 2006, five days after the contract was executed, Charles Banacos ("Banacos")[1] forwarded a $100,000.00 check to Lawyer's Title Insurance Corporation ("LTIC"), which represented the earnest money deposit required under the contract. (J.A. at 95.) The check was issued by Jetstream Finance Corporation ("Jetstream") and Banacos signed the check as a director of Jetstream.[2] (*Id.*)

---

[1] Charles Banacos was one of the three-person team involved in acquiring this property together with Frank Pollara and Harvey Sasso. (J.A. at 97.) However, only Pollara was a party to the contract with Chateau. Documents in the record indicate that Pollara asked Banacos to invest in the buying of this property. (J.A. at 379.) Because Banacos promised to invest, he agreed to make the initial deposit of $100,000.00 for the down payment or initial deposit. (*Id.*) Banacos asked the vice-president of First National Bank in Florida to write a letter to the sellers assuring the sellers that Banacos secured sufficient funds to close on the property. (J.A. at 126.) In a letter dated February 24, 2006, the vice-president of the bank wrote to Pollara asserting that based on the vice-president's prior experiences with Banacos, there would be no concerns with Banacos financing the project. (*Id.*)

[2] There is conflicting information regarding whether Banacos is indeed the director of, or affiliated with, Jetstream Finance Corporation. Banacos submitted a sworn affidavit asserting that he is the director of Jetstream. (J.A. at 379.) However, Eduardo Falcone submitted a sworn affidavit stating that Falcone is the Director of Jetstream and that Banacos has never been a director. (J.A. at 569.) However, the check signed by Banacos has Jetstream as the payee. (J.A. at 95.)

On March 30, 2006, BRAM Realty IV, LLC ("BRAM"), Pollara's lender, wire transferred $1,400,000.00 to LTIC to be held in escrow in preparation for the closing that was to occur the following day. (J.A. at 413.) BRAM and LTIC agreed that LTIC was not to release the funds from escrow except upon further written instructions from BRAM. Furthermore, LTIC was to return the funds to BRAM immediately upon BRAM's written request. (J.A. at 397.) The parties, Pollara and Chateau, did not close on March 31, 2006 as required by the terms of the contract. Pollara alleges that he attended the closing, but Chateau's representatives did not appear. (J.A. at 381.)

On April 4, 2006, LTIC wrote Chateau, informing Chateau that the $100,000.00 check which was issued by Banacos was returned, labeled as "non-sufficient funds." (J.A. at 411.) On the same day, BRAM transferred an additional $100,000.00 to LTIC to be held in escrow. (J.A. at 418.) The additional $100,000.00 that was transferred to LTIC was not connected to the earnest money down payment that the Buyer was to deposit with LTIC by the Buyer as required by the terms of the contract. (J.A. at 382, 418.) Furthermore, according to BRAM, no portion of the total $1,500,000.00 was ever subject to be released to the Seller in the event of the Buyer's breach of the contract by the Buyer. (J.A. at 97.)

On April 6, 2006, both parties signed an addendum to the original contract, titled Addendum #2, which included several amendments. Pollara[3] asserted that prior to signing the addendum, he was not aware that the check Banacos issued on March 6, 2006, was returned for non-sufficient funds. (J.A. at 382.) Pollara further asserted that during the negotiation of the addendum Chateau did not inform him that the check was indeed returned for non-sufficient funds. (*Id.*) Nevertheless, Banacos forwarded another check to LTIC for the $100,000.00 earnest money deposit. In an April 19, 2006 correspondence, LTIC maintained that this second earnest money deposit check had also been returned for "non-sufficient funds." (J.A. at 94.) This addendum, which was mutually agreed to and executed by Pollara and Chateau, provided in pertinent part:

> In consideration of the Buyer having placed $1,500,000 in escrow, Seller will extend the closing of the transaction for up to twenty-one (21) days beyond the agreed deadline while Mr. Frank Pollara, as well

---

[3] All assertions made by Pollara were made by way of a sworn affidavit. (J.A. at 376-90.)

as any assigns agreed to by the Seller, arranges for an additional $500,000 to pay Seller and will pay the entire $2,000,000 agreed purchase price plus costs in cash at closing.

. . . .

Once the Buyer has obtained sufficient funds to close as agreed and notifies Seller, the time to close is also extended, as needed, to prepare any legal documents, clear title, [and] complete all close and title commitment issues. Parties will move to close as soon as possible.

(J.A. at 89.) This addendum did not include a provision concerning the $100,000.00 earnest money deposit that was contained in the original contract. (*Id.*) Therefore, a pivotal issue is whether the parties agreed that the $1,500,000.00 to be placed in escrow superseded the $100,000.00 earnest money deposit.

On April 20, 2006, at the end of the twenty-one day extension period referenced in Addendum #2, Pollara alleges that he appeared for closing but representatives from Chateau again failed to appear. (J.A. at 387.) Pollara also alleges that he called Attorney Kevin Rames ("Attorney Rames"), attorney for Chateau, and Rames said that Chateau "was not ready to close because they were waiting for documents." (*Id.*) On April 24, 2006, Chateau drafted another addendum to the contract titled Addendum #3. (J.A. at 583.) Addendum #3 extended the closing date to May 20, 2006, or sooner. (*Id.*) This addendum also provided:

A second extension of time is hereby granted to Frank C. Pollara (Buyer) by Chateau St. Croix (Seller) in consideration for the following agreements and the closing is extended until May 20, 2006 or sooner by agreement. There has always been a built in extension for title tax, and other closing issues such as document preparation or title clearance, etc.

Attorney Kevin Rames is preparing the closing (i.e. resolving all title and tax issues, preparation of all closing documents) and doing all needed to close this sale. Time is of the essence and closing this sale is to be expedited and all contract agreements kept. This Addendum #3 amends prior terms and conditions and all agreements not specifically amended or changed remains in full force and effect for this sale transaction.

461

The Seller herein was previously informed that the required $100,000 earnest money deposit was made as required by the contract, plus at least $1,500,000 was also escrowed with the Land America/Lawyers Title Company in Tampa as agreed between the parties. Now the seller has been informed that the $100,000 earnest money deposit was not good funds and two checks were not good and escrow was not satisfied. Therefore the Buyer, Frank C. Pollara, will provide proof and notice that the $100,000 earnest money deposit is escrowed good funds plus the full $2,000,000 in cash required now by contract to close is escrowed and available to close this transaction. This notice must be completed to seller and closing attorney by noon May 4, 2006 EDT or the contract is defaulted by Buyer. Closing attorney and Seller can then cancel and void the contract fully with no objections, no recourse, no liability and absolutely no legal recourse or suit against Seller or Seller's representatives.

(J.A. at 584.) Pollara stated that although he did not sign the addendum, he agreed to a third closing date. (J.A. at 388.)

On June 7, 2006, Attorney Rames sent an email to Hunt Logan confirming that the issues Chateau had with the government regarding outstanding property taxes had been resolved. (J.A. at 586.) However, according to the manager of BRAM, as a consequence of the delay in closing the transaction, LTIC was instructed to return the escrowed funds to BRAM on June 12, 2006.[4] (J.A. at 98.) Nevertheless, on June 20, 2006, Attorney Marie Thomas-Griffith ("Thomas-Griffith"), counsel for Pollara, sent a letter via email to Attorney Rames, demanding a date certain for closing no later than Thursday, June 22, 2006. (J.A. at 91, 194.) This letter also recommended "a further amendment to the [contract] to memorialize the new closing date, including a remedy for specific performance in the event the closing does not occur" and threatened to file suit if Chateau failed to close. (*Id.*) In a reply email to Attorney Thomas-Griffith on the same day, Attorney Rames contended that the title and tax issues on the property had not been resolved and that Chateau would not be ready to close until June 26, 2006. (J.A. at 100.)

---

[4] In a letter dated July 10, 2006, an escrow officer of LTIC sent an email to Attorneys Rames and Thomas-Griffith as well as the attorney for the lender indicating that LTIC was holding $1,400,000.00 in escrow. He also indicated that he is not familiar with the particulars of the file and he was just providing information that he pulled from the file.

On June 23, 2006, Attorney Rames emailed Attorney Thomas-Griffith and assured her that all the documents for the closing were complete and that Attorney Thomas-Griffith should reply regarding the financing of the transaction and the timing and location of the closing. (J.A. at 104.) The same day, Attorney Rames sent another email to Attorney Thomas-Griffith, stating that he had contacted the attorney for the lender, and the attorney confirmed that the lender was unable to close before June 28 or 29, 2006. (J.A. at 106.) On June 28, 2006, the lender's attorney sent an email to Attorney Rames and Attorney Thomas-Griffith, asserting that the lender was still waiting for several requested items and authorization documents from Pollara to be able to proceed. (J.A. at 110.) The lender's attorney stated that once the lender received the items it would move quickly to close but would still require about three days to coordinate everything. (*Id.*) Also, on June 28, 2006, Attorney Rames sent an email inquiring as to when closing would occur.

On July 5, 2006, Attorney Rames sent another email to Attorney Thomas-Griffith stating that Chateau had been ready to close since June 23, 2006, and that the email constituted notice that the closing of the transaction must take place within ten (10) days of the email date or on or before July 16, 2006, at 5:00 p.m. (J.A. at 112.) The email further stated that if Pollara failed or refused to close the transaction on or before that date, the transaction would be deemed by Chateau to be abandoned, and the $100,000.00 deposit in escrow at LTIC would be forfeited to Chateau. (*Id.*) According to the record before us, Attorney Thomas-Griffith made no response until July 14, 2006, when in an email to Attorney Rames, she informed him that Pollara had already initiated a lawsuit against the Seller but would forego litigating the matter, if the parties could agree to an acceptable compromise. (J.A. at 116.) In her email Attorney Thomas-Griffith stated:

> The Buyer is willing to close if seller agrees to a contract extension up to July 18, 2006, to waive any damage claims, to provide financing for the balance of the purchase price in the amount of $1,000,000.00 at 6.9% payable as amortized over 18 months, subject to a second priority mortgage position behind the primary lender.

(*Id.*) Attorney Rames responded to Attorney Thomas-Griffith by email on July 15, 2006, stating that Chateau had previously sent a "time is of the

essence" letter to Pollara requiring that he close the transaction for the purchase of the property on or before July 16, 2006. (J.A. at 119.)

As mentioned in her email to Attorney Rames, Attorney Thomas-Griffith filed a Complaint in the Superior Court on behalf of Pollara seeking damages from Chateau for fraudulent and negligent misrepresentation because of Chateau's inability to provide marketable title on each of the closing dates. (J.A. at 28-35.) Liens were recorded against the property known as St. Croix by the Sea by Pollara and by Jetstream on June 30, 2006, and July 13, 2006, respectively. (J.A. at 121-124.) On October 4, 2006, Chateau waived formal service of the Complaint and filed an Answer and a counterclaim against Pollara and also filed a Third Party Complaint against Jetstream and Banacos. (J.A. at 36-42.) Chateau's counterclaim against Pollara claimed that Pollara breached a material term of the contract when the checks for the earnest money deposit were rendered non-negotiable. (*Id.*)

On October 5, 2006, Chateau moved to dismiss Pollara's Complaint for failure to state a claim upon which relief may be granted. (J.A. at 43.) On October 31, 2006, Attorney Thomas-Griffith filed a Motion to Withdraw as counsel for Pollara stating that her client had not honored his financial obligations to her law firm. (J.A. at 150-56.) On November 2, 2006, Attorney Rames filed an Opposition to the Motion to Withdraw. (J.A. at 157-59.) No other action was taken in this case until January 29, 2007, when Attorney Thomas-Griffith wrote a letter to the Clerk of the Court requesting that her Motion to Withdraw filed on October 31, 2006, be brought to the attention of the judge handling the case. (J.A. at 4.)

By Order dated February 12, 2007, the trial court scheduled a hearing for March 2, 2007, to address Chateau's Motion to Dismiss and Attorney Thomas-Griffith's Motion to Withdraw. (J.A. at 160.) On February 27, 2007, Attorney Thomas-Griffith allegedly filed a Motion to Continue the March 2, 2007 hearing;[5] however, the Motion was not recorded on the trial court's docket entries. (J.A. at 161.) On March 1, 2007, Chateau filed a Response to the Motion to Continue the hearing stating that the Motion to Dismiss should be deemed conceded but would agree to an extension to March 7, 2007. (J.A. 163-64.) Therefore, the trial court was indirectly

---

[5] Attorney Thomas-Griffith's Motion to Continue stated that Attorney Thomas-Griffith had to appear in another court for trial in an unrelated case on the same day.

alerted to a possible motion by Pollara's attorney to continue the March 2, 2007 hearing because the trial court had received Chateau's response to the motion to continue the hearing. This Response to the Motion to Continue was recorded on the trial court's docket. (J.A. at 26.) Also, on March 1, 2007, Attorney Lee Rohn filed on behalf of Pollara a Motion for Extension of Time to respond to Chateau's October 5, 2006 Motion to Dismiss. The same Motion informs the court that Attorney Rohn had recently been substituted as counsel of record replacing Attorney Thomas-Griffith. (J.A. at 165.) The trial court did not respond to the Motion to Continue or to the Motion for Extension of Time and Substitution of Counsel. Predictably, neither Attorney Thomas-Griffith nor Attorney Rohn was present at the March 2, 2007 hearing on the Motion to Dismiss and the Motion to Withdraw.[6] (J.A. at 5.) However, Attorney Rames appeared at the hearing and informed the trial court that he had received a Motion for Continuance from Attorney Thomas-Griffith. Thereafter, a March 7, 2007 Stipulation for Substitution of Counsel was submitted by Attorney Rohn and Attorney Thomas-Griffith. (J.A. at 26.)

On April 16, 2007, Chateau filed a Motion for Summary Judgment on its counterclaim against Pollara. (J.A. at 171-185.) Attorney Rohn responded on May 17, 2007, by filing a Motion for Extension of Time to respond to the Motion for Summary Judgment while simultaneously reminding the trial court that it had not as yet approved the Stipulation for Substitution of Counsel. (J.A. at 294.) Attorney Rohn alleges that on May 24, 2007, the trial judge's law clerk informed her that the judge instructed that she must not file any additional documents with the trial court until the substitution of counsel has been approved by the trial court.

On May 26, 2007, the trial court entered an Order granting Chateau's Motion for Dismissal with Prejudice. (J.A. at 24.) On June 11, 2007, the trial court issued an Order dismissing Pollara's Complaint, concluding that eight months had passed without a response to Chateau's motion to dismiss, that Attorney Thomas-Griffith as attorney of record for Pollara did not appear at the March 2, 2007 hearing on the motion, and that Pollara failed to state a claim upon which relief could be granted. (*Id.*) On June 11, 2007, the trial court also entered an Order granting summary judgment on Chateau's counterclaim and granting release of the liens on

---

[6] Attorney Rohn stated that her reasons for not attending the hearing was that she had not yet received the client's file and she thought the hearing was continued. (Appellant's Br. 6.)

the property. (J.A. at 19-20.) Attorney Rohn alleges that the she had no knowledge of the notice of the entry of the Orders until June 15, 2007, when Chateau moved for a "Supplementary Order" on the Motion for Summary Judgment.

On July 5, 2007, Pollara filed a Notice of Appeal of the June 11, 2007 Orders of the trial court and subsequently filed with the Superior Court a Motion to Stay Judgment Pending Appeal. (J.A. at 1.) On July 16, 2007, Chateau filed a Motion to Dismiss the Appeal. Seeking to dismiss his notice of appeal, Pollara filed a Motion for Voluntary Dismissal stating that proceedings in the case were still occurring in the trial court. This Court dismissed the appeal on September 18, 2007.

In Chateau's motion to supplement the order granting summary judgment, Chateau petitioned the trial court to amend its prior grant of summary judgment and grant additional relief to Chateau in the amount of the $100,000 as liquidated damages from the earnest money deposit for the purported breach of contract by Pollara. (J.A at 297.) On February 11, 2008, the trial court simultaneously denied Pollara's Motion to Stay Judgment Pending Appeal and granted Chateau's Motion for Supplementary Order and ordered Pollara to pay $100,000.00 earnest money deposit to Chateau. On February 26, 2008, Pollara filed a Motion for Reconsideration of the June 11, 2007 orders dismissing the Complaint and granting Chateau's motion for summary judgment, as well as the February 11, 2008 Supplementary Order. The trial court denied the Motion for Reconsideration on December 31, 2009. (J.A. at 16.) On January 8, 2010, Pollara appealed the trial court's Order denying the Motion for Reconsideration.

## II. JURISDICTION

Title 4, section 32(a) provides that "the Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." A final order is a judgment from a court which ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment. *Bryant v. People*, 53 V.I. 395, 401 (V.I. 2010); *see also In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008).

On Appeal, Pollara seeks reversal of the Superior Court's June 11, 2007 Orders dismissing the Complaint and granting summary judgment on Chateau's counterclaim. Pollara also seeks reversal of the Superior

Court's February 11, 2008 Order Supplementing the June 11, 2007 summary judgment Order, and the December 31, 2010 Order denying reconsideration of the June 11, 2007 and February 11, 2008 Orders. Chateau argues that this Court lacks jurisdiction to consider Pollara's appeal of the 2007 and 2008 Orders of the Superior Court, but has jurisdiction only to consider the December 31, 2010 Order.[7]

We will address the timeliness of Pollara's appeal under V.I.S.Ct.R. 5(a) which provides in part:

> (1) In a civil case in which an appeal is permitted by law as of right from the Superior Court to the Supreme Court, the notice of appeal required by Rule 4 shall be filed with the Clerk of the Superior Court within thirty days after the date of entry of the judgment or order appealed from
>
> . . . .
>
> (4) If any party makes a timely motion of a type specified immediately below within ten days after entry of judgment . . . the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding. This provision applies to a motion: . . .
>
> > (ii) to amend or make additional findings of fact under FED. R. CIV. P. 52(b), whether or not granting the motion would amend the judgment . . .

■ On June 11, 2007, the Superior Court issued orders dismissing Pollara's Complaint, granting Summary Judgment on Chateau's counterclaim, and granting release of the liens on the property. Within ten (10) days, on June 15, 2007, Chateau filed a Motion for a Supplementary Order which is equivalent to a motion to amend or make additional findings of fact. Consequently, the time for appeal was tolled until the entry of the order disposing of the Motion for Supplementary Order. This Order amending or altering the judgment was not entered by the Superior Court until February 11, 2008.

On February 26, 2008, Pollara filed with the Superior Court a Motion for Reconsideration of the June 11, 2007 Orders of dismissal and

---

[7] The timeliness of Pollara's appeal will be addressed under Supreme Court 5(a), which is a claims-processing rule rather that a jurisdictional requirement. *See First Amer. Dev. Group/ Carib, LLC v. WestLB AG*, 55 V.I. 594 (V.I. July 26, 2011).

summary judgment and the February 11, 2008 Supplementary Order. Although captioned as a Motion for Reconsideration, the motion bore all the trappings of a motion to alter or amend a judgment under Superior Court Rule 50, *see, e.g., Harris v. Garcia*, S. Ct. Civ. No. 2008-0082, 2010 V.I. Supreme LEXIS 3 (V.I. Jan. 14, 2010) (unpublished) (collecting cases), and therefore tolled the time to file a notice of appeal.[8] On December 31, 2009, the Superior Court entered a final order denying Pollara's Motion for Reconsideration of the February 11, 2008 and June 11, 2007 Orders. Accordingly, Pollara timely appealed to this Court when he filed his notice of appeal on January 8, 2010.

## III. STANDARD OF REVIEW

This Court exercises plenary review of a trial court's grant of summary judgment and applies the same test that the trial court should have utilized. *Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32, 43 V.I. 361 (3d Cir. 2001) (quotations omitted). We will review the trial court's dismissal of the Plaintiff's Complaint for abuse of discretion. *Watts v. Two Plus Two, Inc.*, 54 V.I. 286, 290-91 (V.I. 2010); *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). Generally, the denial of a motion for reconsideration is also reviewed for abuse of discretion. *Harvey v. Christopher*, 55 V.I. 565, 572 (V.I. 2011). "However, because an appeal from a denial of a motion for reconsideration necessarily raises the underlying judgment for review, the standard of review varies with the nature of the underlying judgment." *United States v. Herrold*, 962 F.2d 1131, 1136 (3d Cir. 1992). Findings of fact are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007); *United States v. Lockett*, 406 F.3d 207, 211 (3d Cir. 2005).

---

[8] When a period of time is less than eleven days, weekends and holidays are not included in the computation of time. SUPER. CT. R. 9. At the time relevant here, and until Rule 16(b) of this Court was revised December 1, 2009, a similar calculation procedure was applied under the Supreme Court Rules. The February 2008 time period pertinent to this case included the President's Day holiday, observed on Monday, February, 18, 2008. As of February 2008, the time-to-appeal provision of Rule 5(a)(4) relating to post-trial motions deferred the running of the time to appeal if a post-judgment motion of this nature was filed within 10 days. February 26, 2008, was the tenth day after the February 11, 2008 orders, using the counting procedures then applicable. Counsel should be aware that the current Rule allows 28 days for the identified motions, and contains materially different provisions that were not applicable at the time of the post-trial filings in the present case.

468

## IV. DISCUSSION

### A. Whether the Trial Court Erred in Dismissing Pollara's Complaint With Prejudice

 Pollara argues that the trial court erred in its application of law when it dismissed his Complaint with prejudice. The dismissal of a Complaint as a litigation sanction for failure to comply with rules, procedures and court orders, has been recognized as an extreme sanction and, while courts generally do not condone a party's contumacy or disregard for court rules, a dismissal typically would not be upheld without some showing of "bad faith" or "callous disregard" of responsibilities by a party or by the party's attorney. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976). This Court, in *Halliday v. Footlocker Specialty, Inc.*, 53 V.I. 505, 510-13 (V.I. 2010), adopted a test set forth by the United States Court of Appeals for the Third Circuit, which requires trial courts to consider six favors, including: (1) the extent of the *party's* personal *responsibility*; (2) the *prejudice* to the adversary caused by failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of alternative sanctions other than dismissal, which entails an analysis of such sanctions; and (6) the *meritoriousness* of the claim or defense. *Poulis*, 747 F.2d at 868. This Court has previously held that dismissing a Complaint without first considering these factors constitutes an abuse of discretion. *Halliday*, 53 V.I. at 510-13. Although a court must explicitly address and balance each of these factors in its analysis, *Molloy v. Independence Blue Cross*, 56 V.I. 155, 186-87 (V.I. 2012), "not all of the six (6) factors need to be satisfied for a finding of dismissal." *Doe v. Megless*, 654 F.3d 404, 411 (3d Cir. 2011) (citing *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992)).

In its ruling dismissing Pollara's Complaint, the trial court expressed that Pollara failed to respond to Chateau's Motion to Dismiss within twenty days as mandated by Rule 12.1 of the Local Rules of Civil Procedure for the District Court,[9] failed to appear at a hearing on the

---

[9] The Local Rule is made applicable in proceedings in the Superior Court through Rule 7 of the Rules of the Superior Court, which provides that "[t]he practice and procedure in the

Motion, and failed to provide the trial court with a valid reason for not responding or appearing. In its dismissal Order, the trial court applied LRCi 7.1(j) which provides in pertinent part that "upon failure of respondent to file a response and brief in opposition to the motion, the court may treat the motion as conceded and render whatever relief is asked for in the motion." The trial court also dismissed the Complaint for failing to state a claim upon which relief may be granted.

Although the trial court concluded that Pollara had failed to meet various prerequisites relating to the adjudication of his Complaint, the trial court arrived at its conclusion and dismissed the Complaint without first analyzing the *Halliday* factors. Had the trial court applied these factors with a thorough examination of the record, there would be a sounder basis for examining the discretion the trial court applied in finding that Pollara arbitrarily failed to comply with court orders. Therefore, while we conclude that the trial court's failure to apply the *Halliday* factors is inherently an abuse of discretion, we also find that a proper application of the factors would reveal that the trial court's dismissal of the Complaint for the reasons it expressed in its dismissal order was also an abuse of discretion.

■ It is important to note that appellate courts typically do not undertake to balance the *Halliday* factors in the first instance, but rather determines whether the trial court properly balanced the factors and whether the record supports its findings. *Molloy*, 56 V.I. at 187; *see also Livera v. First Nat. State Bank of New Jersey*, 879 F.2d 1186 (3d Cir. 1989). In this case the trial court did not balance the *Halliday* factors nor did it make any findings based on the factors. Therefore, we will reverse the trial court's dismissal of the Complaint.

■ The trial court also justified dismissal of the Complaint based on a Federal Rule of Civil Procedure Rule 12(b)(6) violation — failure to state a claim upon which relief could be granted. As grounds for dismissal under Rule 12(b)(6), the trial court argued that the Pollara's failure to tender the $100,000.00 earnest money deposit was a material breach of contract that relieved the Seller of all obligations under the contract. Here, the trial court failed to address the sufficiency of the Complaint but rather ruled that the buyer breached the contract. The trial court did not address

---

Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by the Rules of the District Court . . . ."

in its Order whether if the factual allegations in Pollara's Complaint were accepted as true, he would be entitled to relief on the causes of action he raised. Pollara's Complaint contained two counts: fraudulent misrepresentation and negligent misrepresentation. To succeed on a claim of fraudulent misrepresentation one must prove that the maker of the contract "intends his assertion to induce a party to manifest his assent and the maker (a) knows or believes that the assertion is not in accord with the facts, or (b) does not have the confidence that he states or implies in the truth of the assertion, or (c) knows that he does not have the basis that he states or implies for the assertion." RESTATEMENT (SECOND) CONTRACTS § 162.[10]

▉ ▉ To support his claim of fraudulent misrepresentation, Pollara asserts in his Complaint that on February 28, 2006, he entered into a contract which stated that Chateau would sell him a specific property for $2,000,000.00. (J.A. at 29-30.) Pollara also asserts that the contract was to close in thirty days after the execution of the contract and that he, Pollara, was prepared for closing but the sellers did not appear. (J.A. at 30.) Pollara proffers that at the time the contract for sale was entered into Chateau knew that it could not convey marketable title for the property. To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must survive a three-step analysis undertaken by a trial court:

> First, the court must take note of the elements a plaintiff must plead to state a claim so that the court is aware of each item the plaintiff must sufficiently plead. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. These conclusions can take the form of either legal conclusions couched as factual allegations or naked [factual] assertions devoid of further factual enhancement. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief. If there are sufficient remaining facts that the court can draw a reasonable inference that the defendant is liable based on the elements noted in the first step, then the claim is plausible.

---

[10] Restatements of the Law may apply to the Virgin Islands through 1 V.I.C. § 4, subject to the authority of this Court and the Superior Court to shape the common law of the Territory. *Banks v. International Rental and Leasing Corp.*, 55 V.I. 967, 974-80 (V.I. 2011).

*Joseph v. Bureau of Corrections*, 54 V.I. 644, 649-50 (V.I. 2010) (quoting *Santiago v. Warminster Tp.*, 629 F.3d 121, 129-30 (3d Cir. 2010)). Taking all of Pollara's well-pleaded factual assertions as true, Pollara submitted enough facts to present a plausible claim of fraudulent misrepresentation.

██ Nevertheless, the trial court found that Pollara's claim was insufficient because he breached the Contract and therefore relieved Chateau of its entire obligation. The trial court seems to have decided the case on the merits rather than determining if the Complaint was sufficient. Furthermore, as the Supreme Court of the United States has observed, "[a] well-pleaded Complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also Matrixx Initiatives, Inc. v. Siracusano*, ___ U. S. ___, 131 S. Ct. 1309, 179 L. Ed. 2d 398 (2011). Therefore, we find that the trial court erred in also dismissing the Complaint under Rule 12(b)(6).

### B. Whether the Trial Court Erred in Granting Summary Judgment to Chateau on its Counterclaim and Awarding Chateau $100,000.00 in Damages

The trial court also erred in granting summary judgment on Chateau's counterclaim for breach of contract by Pollara. "Because summary judgment is a drastic remedy, it should be granted only when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Joseph v. Hess Oil Virgin Islands Corp.*, 54 V.I. 657, 663-64 (V.I. 2010) (quoting *Williams v. United Corp.*, 50 V.I. 191, 194-95 (V.I. 2008)); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32, 43 V.I. 361 (3d Cir. 2001); *see also, e.g., Beard v. Banks*, 548 U.S. 521, 529, 126 S. Ct. 2572, 165 L. Ed. 2d 697 (2006). "When reviewing the record, this Court must view the inferences to be drawn from the underlying facts in the light most favorable to the non-moving party, and we must take the non-moving party's conflicting allegations as true if 'supported by proper proofs.' " *Joseph*, 54 V.I. at 664.

██ In this case, there is no opposition to Chateau's motion for summary judgment on record. Where there is no written objection and memorandum opposing a motion for summary judgment, the non-

responding party waives the right to controvert the facts asserted by the moving party in the motion for summary judgment and the supporting material accompanying it. *See* LRCi 56.1(d). In such a situation, the court accepts as true all material facts set forth by the moving party with appropriate record support, and grants summary judgment only if those facts entitle the moving party to judgment as a matter of law. *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990).

 Chateau's Counterclaim, for which Chateau sought summary judgment, alleged $100,000.00 in damages for breach of contract and release of liens that were placed on the property. Even if we accept all the facts stated in the motion for summary judgment as true, Chateau was not entitled to summary judgment. Chateau failed to show that Pollara's failure to tender the earnest money deposit constituted a material breach of contract as amended by the addendums to the contract, which changed material terms in the original contract. To state a claim for a breach of contract under Virgin Islands law, a plaintiff must allege: "(1) an agreement, (2) a duty created by that agreement, (3) a breach of that duty, and (4) damages." *Arlington Funding Services, Inc. v. Geigel*, 51 V.I. 118, 135 (V.I. 2009) (citations omitted); *accord, United Corp. v. Tutu Park, Ltd.*, 55 V.I. 702, 707 (V.I. 2011); *see also Marcus v. BMW of America, LLC*, 687 F.3d 583 (3d Cir. 2012).

### 1. An agreement

The Motion for Summary Judgment asserts that there was an agreement and a duty created by that agreement. (J.A. at 171.) These uncontroverted facts are also evidenced by the Contract for Sale which is included in the record. In this case there is no dispute that there was an agreement. The record informs that it is conceded that the parties initially entered into a contract for the sale of the St. Croix By-The-Sea Hotel property for $2,000,000.00 with the closing scheduled for thirty days following the creation of the contract. Both parties signed and executed the agreement. This agreement was subsequently amended by an addendum executed by both parties. This addendum, designated as Addendum #2, changed material terms in the contract.

### 2. A Duty Created by that Agreement

The terms of the original agreement were that Pollara would make an earnest money deposit of $100,000.00 with Lawyers Title Insurance

Corporation, within twenty-four hours of the effective dates. Pollara would also give $1,000,000.00 as a down payment, toward which the $100,000.00 earnest money deposit would be credited. The balance of $900,000.00 would be paid at closing by cashier's check or certified funds acceptable to seller. The remaining $1,000,000.00 would be financed by seller. At closing, Chateau was obligated to convey "good, marketable, and insurable, fee simple title to the property" by warranty deed. The duties stated above were superseded by Addendum #2 to the contract which both parties signed and which states:

> In consideration of the Buyer having placed $1,500,000 in escrow, Seller will extend the closing of the transaction for up to twenty-one (21) days beyond the agreed deadline while Mr. Frank Pollara, as well as any assigns agreed to by the Seller, arranges for an additional $500,000 to pay Seller and will pay the entire $2,000,000 agreed purchase price plus costs in cash at closing.
>
> . . . .
>
> Once the Buyer has obtained sufficient funds to close as agreed and notifies Seller, the time to close is also extended, as needed, to prepare any legal documents, clear title, [and ]complete all close and title commitment issues. Parties will move to close as soon as possible.

(J.A. at 89). This addendum created an issue of fact because it is unclear whether the $100,000.00 deposit remained a term of the contract after the addendum was executed. The addendum explicitly states that "in consideration of the Buyer having placed $1,500,000 in escrow, Seller will extend the closing of the transaction." The $1,500,000.00 in escrow could have constituted consideration for the extension of the contract closing date. Because Addendum #2 was the last agreement that the parties indisputably made, its interpretation is essential in determining whether there was a breach under the new terms of the contract. Because it cannot be said as a matter of law that one or the other reading is the only viable understanding, there is an ambiguity and a trial was necessary to resolve the parties' dispute.

### 3. Breach of Contract

On the issue of a breach of contract, Chateau claims in its motion for summary judgment that the "contract provided in the section designated "DEPOSIT" that within twenty-four (24) hours of its full execution, a

down payment of $100,000.00 would be paid over to the Escrow Agent by Pollara, which would be subject to forfeiture to Chateau St. Croix LLC in the event of default." (J.A. at 178.) This language is consistent with the provisions of the contract for sale. Chateau further states in its Motion, that on May 3, 2006, it was initially informed that the $100,000.00 check was returned for insufficient funds, and that it was advised by Pollara that the default would be cured. (J.A. at 178.)

First, it is unclear whether Pollara knowingly breached the contract on March 31, 2006, because the trial record does not indicate whether either party knew at this time that the earnest money deposit check was returned for insufficient funds. More importantly, Chateau did not attempt to recover the $100,000.00 earnest money deposit under the terms of the addendum to the contract for the alleged breach of contract. If Chateau knew that the $100,000.00 check was returned and that Pollara had breached the contract, but elected to execute an addendum to the contract, then Chateau forfeited its right to recover under the original contract. Consequently, if the financial terms of the original contract were in fact superseded by the addendum, there remains a factual issue of whether Pollara, as the buyer, was in breach of the contract.

Secondly, Addendum #2 required that Pollara deposit $1,500,000.00 in escrow and the remainder to be paid at closing. It is undisputed that at that time, the $1,500,000.00 was in escrow and that Pollara, in a sworn affidavit, had claimed to have been present for closing within twenty-one days as provided for in the addendum. However, Chateau's representative or counsel did not appear at closing. Thirdly, Chateau admits that it did not have marketable title on April 21, 2006, the second closing date. Nonetheless, the addendum signed by both parties provided for additional time after Chateau notifies Pollara that the money is available for the seller to clear title to the property. Chateau knew that the money was in escrow from early April and that it did not have marketable title until late June 2006. By this time, Pollara's lender retrieved the escrow money because of the failure of the parties to timely close the sale of the property. Nevertheless, there is also another issue regarding whether Pollara met all his financial obligations with his lender in time for the closing date.

This case presents a myriad of issues and unanswered questions. It is obvious that more fact finding and discovery needed to be conducted. There are contradicting affidavits in the record addressing relevant issues. Accordingly, there are clearly different factual versions of the dispute

between the parties, and it is essentially impossible to conclude that there is no genuine issue of material fact.

### 4. Damages

Until these issues of fact are resolved it would be impossible to determine which party — if any — is entitled to damages. Therefore, the trial court's grant of the Motion for Summary Judgment and award of damages constitute an abuse of discretion under the circumstances.

### C. Whether the Trial Court Erred in Failing to Reconsider its Dismissal of Pollara's Complaint and its Grant of Summary Judgment to Chateau

In its December 31, 2009 Order denying Pollara's Motion for Reconsideration, the trial court stated that for the same reasons set forth in the Order dismissing the Complaint, it declined to reconsider its previous Orders. We have already established that dismissing the Complaint with prejudice and that the granting of summary judgment to Chateau on Chateau's Counterclaim were an abuse of discretion. Thus, we vacate the Superior Court's December 31, 2009 Order as moot. *See Pickard-Samuel v. Gov't*, S. Ct. Civ. No. 2008-0031, 2010 V.I. Supreme LEXIS 19 (V.I. June 4, 2010).

### V. CONCLUSION

Therefore, we reverse the Superior Court's dismissal of the Complaint and the Superior Court's granting of the Defendant's Motion for Summary Judgment, vacate its orders refusing to reconsider these rulings, and remand the case to the trial court for further proceedings in a manner consistent with this Opinion.