**CONSTRUCTION TECHNICIANS d/b/a V.I.A.R.C.O. and CLEVE A. GEORGE, In his capacity as President and Individually, Appellant/Defendant**

**v.**

**ZURICH AMERICAN INSURANCE COMPANY as successor-in-interest to ZURICH INSURANCE COMPANY (U.S. Branch), Appellee/Plaintiff**

S. Ct. Civil No. 2012-0125

Supreme Court of the Virgin Islands

July 18, 2014

CLEVE A. GEORGE, St. Thomas, USVI, *Pro se.*

SUNSHINE S. BENOIT, ESQ., Bryant Barnes Blair & Benoit, LLP, St. Croix, USVI, *Attorney for Appellee.*

CABRET, *Associate Justice*; SWAN, *Associate Justice*; and MOLLOY, *Designated Justice*[1]

## OPINION OF THE COURT

(July 18, 2014)

SWAN, *Associate Justice.* Appellant, Cleve A. George ("George"), appeals the Superior Court's rulings that the facts submitted by Appellee,

---

[1] Chief Justice Rhys S. Hodge is recused from this matter. The Honorable Robert A. Molloy has been designated to sit in his place pursuant to title 4, section 24(a) of the Virgin Islands Code.

Zurich American Insurance Company ("Zurich"), be deemed admitted, that judgment be entered in Zurich's favor, and that George's counterclaims be stricken from the record. For the reasons enumerated below, we affirm the Superior Court's rulings and reject George's contentions.

## I. FACTS AND PROCEDURAL HISTORY

George, owner of Virgin Islands Asbestos Removal Company ("V.I.A.R.C.O."), subcontracted with Alvin Williams Trucking and Equipment Rental to provide asbestos removal services at the Donoe Housing demolition project in November 2000. As required by federal law, George was obligated to maintain an asbestos general liability insurance policy. George secured a policy from Zurich through its agent, Professional Risk Planners ("PRP"), on November 27, 2000. The estimated policy premium was $17,925, a deposit premium, to be readjusted after an audit of V.I.A.R.C.O. was conducted by Zurich at the expiration of the policy's term.[2]

As the expiration of the policy approached, George experienced financial and legal difficulties. The policy required that George allow Zurich or its authorized representative to conduct an audit of the books and records of V.I.A.R.C.O. in order to determine the total premium. In December 2001 Zurich hired CP Commercial Specialists ("ChoicePoint") to conduct the audit of V.I.A.R.C.O. When ChoicePoint was unsuccessful in performing the audit, a second company, Bonding & Insurance Specialists Agency Inc. ("BISA"), was hired. BISA conducted an estimated audit because it was unable to obtain the actual figures from George's records and informed George via certified mail in April 2002, that the additional premium was $26,888. This correspondence also contained the procedures for disputing the estimated additional premium. George admitted to not reading the dispute procedures in the contract, although he was aware that he was subject to an audit.

Before the audit of the 2000-2001 policy occurred, George attempted to secure a second policy with Zurich. He completed an application and

---

[2] These details were taken from the contract that the parties consummated. Neither party submitted a contract signed by either George or Zurich. Accepting for present purposes the contentions of George, we accept the contract between the parties as an outline of the terms that they agreed to.

submitted it to PRP. The application asked George if an abatement project under the company's supervision had ever been prematurely terminated to which George answered "No." The application also asked George to disclose any citations he and/or his company received from the "federal, state or local agencies for any violations, whatsoever," to which George answered "No." On December 13, 2001, BISA sent a letter to PRP stating that it would not be offering a quote on this account based on George's answer to the question on the form regarding any incidents. Prior to the insurance renewal request, on February 9, 2001, V.I.A.R.C.O. had received a Stop Work Order from the Virgin Islands Department of Planning and Natural Resources. George never mentioned receiving this Stop Work Order on his second application for insurance coverage.

Notably, the additional premium for the insurance coverage was never remitted to Zurich. After multiple failed attempts at collection, Zurich filed a complaint with the Superior Court on September 2, 2004. The complaint requested judgment against George for $26,888, in addition to costs, reasonable attorney's fees, and any other relief the court found just and equitable. On May 16, 2005, George filed an amended answer, with affirmative defenses and a counterclaim. George requested that the court dismiss Zurich's action with prejudice, and pursuant to his counterclaim, sought a judgment for compensatory and punitive damages in an amount to be determined by a jury, plus an award of attorney's fees and costs, and any other relief the court found just and equitable.

The case was first heard by the Superior Court on November 30, 2006. Another hearing was held on February 21, 2007. On May 23, 2007, the Superior Court signed an Order informing George that if he intended to proceed *pro se,* he had to provide the court with notice, a current mailing address and a telephone number used by him during business hours. On August 2, 2007, Zurich filed a Motion to Amend Its Answer and Affirmative Defenses to Defendant's Counterclaims. One month later, on September 2, 2007, Zurich filed its Motion for Summary Judgment. George moved the court for an extension of time to respond to Zurich's Motion for Summary Judgment which Zurich opposed on November 14, 2007. George further moved the court for a stay of proceedings or a continuance, which Zurich opposed on January 22, 2008.

On February 29, 2008, George was convicted in the District Court for violations of the federal Clean Air Act, 42 U.S.C. §§ 7412 and 7413(c)(1), and knowingly and willfully making materially false, fictitious and

fraudulent statements and representations under 18 U.S.C. § 1001(a). George was sentenced to 33 months incarceration and three years of supervised probation. Over the next three years, George filed a plethora of motions seeking extensions of time to submit his responses to Zurich's discovery requests. The trial court held numerous status hearings eventually culminating in a bench trial on August 14, 2012, after which the trial court granted judgment to Zurich in the amount of $26,888 plus reasonable attorney's fees. The trial court likewise entered its Finding of Facts and Conclusions of Law and Judgment, in which it memorialized its rulings at the August 14, 2012 bench trial, on October 18, 2012. This appeal ensued.

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code states that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." A final order ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment. *Ramirez v. People,* 56 V.I. 409, 416 (V.I. 2012) (citing *In re Truong,* 513 F.3d 91, 94 (3d Cir. 2008); *Bethel v. McAllister Bros., Inc.,* 81 F.3d 376, 381 (3d Cir. 1996)). The Superior Court entered its final judgment in this case on October 18, 2012, and George timely filed his Notice of Appeal on November 15, 2012. Therefore, we have jurisdiction over George's appeal.[3]

## III. STANDARD OF REVIEW

The standard of review for this Court's examination of the trial court's application of law is plenary and its findings of facts are reviewed for clear error. *Rodriguez v. Bureau of Corr.,* 58 V.I. 367, 371 (V.I. 2013); *Blyden v. People,* 53 V.I. 637, 646-47 (V.I. 2010); *Pell v. E.I. DuPont de Nemours & Co.,* 539 F.3d 292, 300 (3d Cir. 2008). The dismissal of George's counterclaim will be reviewed for an abuse of discretion.

---

[3] George was originally represented by counsel in this matter. During this case, he decided to proceed *pro se.* This Court has already stated that *pro se* status allows for a less stringent standard but does not allow a party to ignore or defy the "rules of procedural and substantive law." *Simpson v. Golden,* 56 V.I. 272, 280 (2012). Further, we have stated that *pro se* filings should be construed liberally. *Etienne v. Etienne,* 56 V.I. 686, 691 n.5 (2012).

*Pollara v. Chateau St. Croix, LLC,* 58 V.I. 455, 468 (V.I. 2013) (citing *Watts v. Two Plus Two, Inc.,* 54 V.I. 286, 290-91 (V.I. 2010)).

## IV. ISSUES

1. Whether the trial court properly dismissed Appellant/Defendant's counterclaims pursuant FED. R. CIV. P. 16(f)(1)(C) and 37(b)(2)(A)(ii)-(vii)?
2. Whether the trial court properly awarded judgment in favor of Appellee?
3. Whether the trial court properly considered George's convictions for knowingly and willfully making false, fictitious and fraudulent statements and representations?

## V. DISCUSSION

### A. The trial court did not abuse its discretion when it deemed the contents of Zurich's request for admissions as admitted.

George asserts that the trial court abused its discretion when it deemed the content of Zurich's request for admissions as conceded by George. The trial court deemed Zurich's facts as admitted in accordance with Federal Rule of Civil Procedure 36 because of George's failure to serve upon Zurich a written answer or objection to its Requests for Admissions over the duration of the case which spanned more than eight years.

The trial court relied on Federal Rule of Civil Procedure 36(a)(3) which addresses requests for admissions and which states:

> (a) Scope and Procedure.
>
> . . . .
>
> (3) *Time to Respond; Effect of Not Responding.* A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.

■ The trial court did not abuse its discretion when it deemed as admitted the statement of facts submitted with Zurich's motion. The rule is explicit that George had 30 days to respond to Zurich. The record discloses that the trial court was exceedingly lenient with George and

granted him innumerable extensions in order for him to reply to Zurich's motion. George ignored the extensions, refused to respond to Zurich's motion but allocated time to simultaneously file a Motion for Summary Judgment on his counterclaim. George took advantage of the trial court's leniency and its empathy for George's incarceration and his status as a *pro se* litigant. Accordingly, the Superior Court did not abuse its discretion in arriving at its decision.

### B. The trial court abused its discretion when it struck George's counterclaims as a sanction for his dilatoriness, but that error was harmless.

The trial court struck George's counterclaims as a sanction for his failure to comply with the timeline imposed by the trial court on multiple occasions. The trial court relied on Federal Rules of Civil Procedure 16(f)(1)(C) and 37(b)(2)(A)(i)-(vii). (J.A. 34-37.) Rule 16(f)(1)(C) states:

> (f) Sanctions.
>
>> (1) *In General.* On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:
>>
>> . . . .
>>
>> (C) fails to obey a scheduling or other pretrial order.

Rule 37(b)(2)(A)(ii)-(vii) states:

> (b) Failure to Comply with a Court Order.
>
>> (2) *Sanctions Sought in the District Where the Action Is Pending.*
>>
>>> (A) For Not Obeying a Discovery Order. If a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders. They may include the following:
>>>
>>>> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>>>> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>>>> (iii) striking pleadings in whole or in part;

159

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

■ Dismissal as a sanction for failure to comply with court rules or orders "typically would not be upheld without some showing of 'bad faith' or 'callous disregard' of responsibilities by a party or by the party's attorney." *Pollara*, 58 V.I. at 469. This Court has adopted six factors expounded in the Third Circuit's opinion in *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984), for determining the validity of a dismissal as a sanction. *Pollara*, 58 V.I. at 469. Further, this Court has stated that the trial court's failure to consider these factors is an abuse of discretion. *Id.* (citing *Halliday v. Footlocker Specialty, Inc.*, 53 V.I. 505, 510-13 (V.I. 2010)). The factors are: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of alternative sanctions other than dismissal, which entails an analysis of such sanctions; and (6) the meritoriousness of the claim or defense." *Halliday*, 53 V.I. at 510 (quoting *Poulis*, 747 F.2d at 868). On appellate review, this court "typically [does] not undertake to balance the *Halliday* factors in the first instance, but rather determines whether the trial court properly balanced the factors and whether the record supports its findings." *Pollara*, 58 V.I. at 470 (citing *Molloy v. Independence Blue Cross*, 56 V.I 155, 187 (V.I. 2012)). Further, "Although a trial court is not required to find that all the factors weigh in favor of dismissal to warrant dismissal of the claim, the court must explicitly consider all six factors, balance them, and make express findings." *Molloy*, 56 V.I. at 186.

■ A review of the record reveals that the trial court was aware of the *Halliday* factors, but neglected to expressly balance each factor as required. The record confirms that Zurich discussed the *Halliday* factors

in its Motion to Deem Conceded Its Motion to Strike Defendant's Counterclaim and in its Motion to Preclude Defendants From Calling Witnesses or Introducing Evidence at Trial. The trial court also stated, "That counterclaim is supposed to stand on its own as if you filed it on its own, and if you don't want to pursue it, and as Attorney Benoit said, that she went through the *Halliday* factors and everything else to talk about the delay, the prejudice and everything else to her client." The trial court did not divulge how it had evaluated each *Halliday* factor, and as such did abuse its discretion. Although this failure was an error, this error was harmless. As we discussed above, the trial court correctly deemed conceded all of Zurich's requests for admissions, thus making George's counterclaim meritless and making this error harmless.

### C. The trial court did not err when it referenced George's conviction because the conviction included making false statements as required by Federal Rule of Evidence 609.

George asserts that the trial court erred by considering his federal convictions for violating the Clean Air Act while managing the removal of asbestos at the Donoe Housing Community for which Zurich insured George from November 2000 through November 2001. George states, "the Superior Court's acceptance of the fact of said trial and conviction, as tangible or probable evidence of my indebtedness to Appellee/Plaintiff is grossly and highly prejudicial and cannot reveal any facts that are probative to the claimed indebtedness."

The Legislature of the Virgin Islands made the Federal Rules of Evidence applicable to evidentiary issues in the court of the Virgin Islands in 2010 through section 15(b) of Act No. 7161. *See* 2010 V.I. Sess. Laws 50; *Christopher v. People,* 57 V.I. 500, 507 (V.I. 2012). Thus, while the Rules of Evidence had been in effect for over two years at the time of the August 2012 bench trial in this case, George failed to make any objection involving Federal Rule of Evidence 609(a)[4] during trial, which allows the admission of convictions that involve dishonest acts or false statements as

---

[4] Federal Rule of Evidence 609 provides:

> (a) **In General.** The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>
> > (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:

has occurred in this case. Additionally, because of George's dilatory behavior in failing to respond to Zurich's request for admissions, among the facts deemed admitted because of George's failure to respond include his convictions for providing false statements to the EPA.

■ George was convicted in the District Court of 12 counts of false statements which were related to the project insured by Zurich. Under the insurance policy from November 2000 through 2001, George was required to inform Zurich of any violations or warnings received for the project that it insured. George failed to do so. This information was used not only to prove the untrustworthiness of George but also to prove his breach of the insurance policy. *See* FED. R. EVID. 803(22) (hearsay exception allowing admission of judgments of prior conviction for purposes other than impeachment under Rule 609). Accordingly, the trial court did not err in allowing Zurich to present evidence of George's convictions for false statements.

### D. George mentioned a number of issues but only superficially and never developed them; therefore, this Court need not address them pursuant to Supreme Court Rule 22.

■ In the conclusion of George's brief, he unintelligibly and carelessly intersperses the phrases right to a fair trial, right of confrontation and right to due process. These legal ideas were never developed into complete, supported arguments presented to the Court. Our Rule 22(a)(5) states that arguments must be accompanied by "citations to authorities, statutes, and parts of the record relied on." George's dismal failure to comply with Rule 22 forecloses any discussion on those issues.

## VI. CONCLUSION

For the reasons discussed above, this Court affirms the Finding of Facts and Conclusions of Law and the Judgment entered by the Superior Court on October 18, 2012.

---

(A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and

(B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and

(2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving — or the witness's admitting — a dishonest act or false statement.